85 P.3d 931 (2004)
120 Wash.App. 374
Milan and Jean JECKLE, Husband and Wife, Appellants,
v.
Robert CROTTY and Nancy Crotty, Husband and Wife, and The Marital Community Composed Thereof; Tammy Wilson Previously Known As Tammy Shallbetter and John Doe Wilson, Wife and Husband, and The Martial Community Composed Thereof, Britt Tinglum and John Doe Tinglum, Wife and Husband, and The Marital Community Composed Thereof; Darrell Scott and Jane Doe Scott, and The Marital Community Composed Thereof; Lynn Sarko and Jane Doe Sarko, Husband and Wife, and The Martial Community Composed Thereof; Amy Hanson and John Doe Hanson, Wife and Husband, and The Marital Community Composed Thereof; Michael Woerner and Jane Doe Woerner, Husband and Wife, and The Marital Community Composed Thereof; David Ashbaugh and Jane Doe Ashbaugh, Husband and Wife, and The Marital Community Composed Thereof; Lukins & Annis, P.S. A Washington Professional Services Corporation; Keller Rohrbach, LLP, A Washington Limited Liability Partnership; Stanislaw *932 Ashbaugh, P.S., A Washington Professional Services Corporation; The Medical Quality Assurance Commission of Washington, An Agency of the Washington State Department of Health, Respondents.
No. 21815-5-III.
Court of Appeals of Washington, Division 3, Panel Ten.
March 4, 2004.
*933 Milan Jeckle, Spokane, WA, for Appellants.
Andrew C. Bohrnsen, Law Office of Bohrnsen & Stowe PS, Timothy P. Cronin, Attorney at Law, Spokane, WA, for Respondents.
BROWN, C.J.
The issue is whether appellant, Milan Jeckle, M.D., has stated any cause of action against the respondent attorneys and law firms that can survive a CR 12(b)(6) motion for failure to state a claim. Dr. Jeckle's claims involved the conduct of the respondents in obtaining a list of his patients from a Medical Quality Assurance investigation and using it to contact prospective clients about joining ongoing suits against him for prescribing the diet drug Fen-Phen. Dr. Jeckle alleged actions under chapter 42.17 RCW, the Public Disclosure Act (PDA); chapter 19.86 RCW, the Consumer Protection Act (CPA), and chapter 70.02 RCW, the Uniform Health Care Information Act (UHCIA), together with general tort claims.
*934 We hold Dr. Jeckle failed to state any cause of action and affirm the dismissal of his suit. However, because the CPA claim presented a reasonable argument in support of an issue of first impression, we disagree with the trial court that all theories were frivolous and, therefore, reverse the trial court's award of sanctions.

FACTS
In the mid-1990s, a prescription drug known popularly as Fen-Phen was marketed for weight loss. Dr. Jeckle began prescribing it for large numbers of his patients. In 1997, the Mayo Clinic reported Fen-Phen damaged heart valves in a high percentage of users. Washington's Medical Quality Assurance Commission then looked into Dr. Jeckle's use of the drug in his weight loss clinic. During this process, the Commission's investigator partly copied 10 of Dr. Jeckle's patient files. According to Dr. Jeckle, the investigator then determined the clinic should be closed but no adverse action should be taken against Dr. Jeckle by the Commission.
Later, attorney Robert Crotty of the law firm of Lukins and Annis asked the Commission to re-open its investigation. Mr. Crotty represented several plaintiffs who had filed a class action suit against Dr. Jeckle. See Wright v. Jeckle, 104 Wash.App. 478, 480, 16 P.3d 1268 (2001). According to Dr. Jeckle, the Commission had a doctor review the incomplete copies of the 10 files it had in its possession. The reviewing doctor concluded that the investigation should be re-opened. In the re-opened investigation, the Commission required Dr. Jeckle to provide summaries of all patient files from 1996 and 1997. That time period involved 20,000 office visits and 3,671 patients. In March 1999, the Commission formally charged Dr. Jeckle.
In July 1999, the assistant attorney general (AAG) handling the Commission's charges against Dr. Jeckle contacted Mr. Crotty to ask if he had deposed Dr. Jeckle. He had not, but Mr. Crotty copied and sent the AAG a nurse's deposition he had taken for the private lawsuit against Dr. Jeckle. In response to Mr. Crotty's request, the AAG sent him a copy of the Commission's file on Dr. Jeckle. Soon, Dr. Jeckle heard from patients that they were receiving unsolicited phone calls encouraging them to join lawsuits against Dr. Jeckle. During an August 2000 deposition by Mr. Crotty of Dr. Jeckle, he realized from the questions asked that Mr. Crotty had seen a patient file Dr. Jeckle had provided the Commission. Mr. Crotty turned the file over to the court and explained he had shared the file with Seattle attorneys, including lawyers in the firms of Stanislaw Ashbaugh and Keller Rohrbach, who represented plaintiffs in similar suits.
In March 2002, Dr. Jeckle filed this action against the lawyers representing the plaintiffs, their firms, the Commission, and the AAG that had released the file to Mr. Crotty. Dr. Jeckle alleged multiple causes of action:
(1) Intentional interference with Dr. Jeckle's medical practice.
(2) Violation of chapter 42.17 RCW, the Public Disclosure Act.
(3) Outrage.
(4) Violation of chapter 19.86 RCW, the Consumer Protection Act, in that the lawyers used the file to contact potential clients.
(5) Violation of chapter 70.02 RCW, the Uniform Health Care Information Act.
(6) Invasion of privacy.
(7) Infliction of emotional distress.
(8) Civil conspiracy.
In June 2002, the law firms and the firms' lawyer defendants moved under CR 12(b)(6) to dismiss all of Dr. Jeckle's causes of action as to them and award attorney fees for a frivolous suit. In December 2002, the court granted these motions and awarded attorney fees. It certified the order as appealable under CR 54(b), even though the Commission and the AAG remained as defendants. The court denied Dr. Jeckle's motion to reconsider. Then, Dr. Jeckle appealed.

ANALYSIS

Standard of Review
We review de novo the trial court's dismissal decision under CR 12(b)(6) for failure to state a claim upon which relief can be granted. Cutler v. Phillips Petroleum Co., *935 124 Wash.2d 749, 755, 881 P.2d 216 (1994), cert. denied, 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995). Such dismissals are appropriate only if "it appears beyond a reasonable doubt that no facts exist that would justify recovery." Id. at 755, 881 P.2d 216. We accept as true the allegations in the plaintiffs' complaint and the reasonable inferences that can be drawn from the allegations. See Reid v. Pierce County, 136 Wash.2d 195, 201, 961 P.2d 333 (1998).

A. Public Disclosure Act Cause of Action
The issue is whether the trial court erred in deciding no cause of action exists under CR 12(b)(6) against the law firms and lawyers based upon Dr. Jeckle's allegation that they violated the Public Disclosure Act (PDA), chapter 42.17 RCW, when they obtained and used the investigatory records of the Medical Quality Assurance Commission in aid of their private lawsuits against Dr. Jeckle.
RCW 42.17.310(1)(d) exempts from public disclosure "specific investigative records compiled by ... state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential ... for the protection of any person's right to privacy." Under RCW 42.17.255, "[a] person's `right to privacy,' `right of privacy,' `privacy,' or `personal privacy,' as these terms are used in that chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.17.390 provides for civil remedies and sanctions for violations of the PDA. RCW 42.17.390(3) imposes a civil penalty of not more than $10,000 for each violation. RCW 42.17.312 provides that "Chapter 70.02 RCW [Uniform Health Care Information Act] applies to public inspection and copying of health care information of patients."
Regarding public disclosure, the Department of Health has issued WAC 246-08-390(4), which partly provides "[t]he Department shall not make health care information obtained under RCW 70.02.050 available for public inspection and copying except as may be required by chapter 42.17 RCW. No health care information containing patient identifying data shall be made available for public inspection and copying under 42.17 RCW." Under WAC 246-08-420(5), "[t]he Department reserves the right to determine that a public record is exempt from public disclosure under the provisions of chapter 42.17 RCW." Subsection (6) of that section partly states "[t]he Department reserves the right to delete identifying details when disclosing public records if there is reason to believe that disclosure of such details would be an invasion of personal privacy."[1]
In analyzing Dr. Jeckle's argument, we first note that under RCW 42.17.310(d), release of the information in the files is a violation of the PDA only if the release would invade a person's right of privacy. Dr. Jeckle has made no showing that release of the Commission's file violated his right of privacy. In any event, the person to whom the file is released has no liability under the PDA; rather, the liability is with the public body (here, the Commission) improperly releasing the information.[2] The defendants' liability, if any, would have to be premised upon a common law theory of invasion of privacy, and Dr. Jeckle has not established the elements of that cause of action.
Specifically, Washington recognizes a common law right of privacy and the right of individuals to bring a cause of action for invasion of that right. Reid v. Pierce County, 136 Wash.2d 195, 206, 961 P.2d 333 (1998). The Reid court cited Restatement (Second) of Torts § 652D (1977), which sets forth the *936 same elements as appear in RCW 42.17.255: Would the publicity concerning another's private life be highly offensive to a reasonable person? And, is that information not of legitimate public concern? Because the file is not part of the record on appeal, we cannot assume it contains information that would constitute an invasion of Dr. Jeckle's right of privacy.
Dr. Jeckle further argues the disclosure violated his patients' right of privacy in their medical records. However, no relief is available to Dr. Jeckle for an invasion of his patients' rights. He does not have that "`personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends....'" BLACK'S LAW DICTIONARY, "Standing" (7th ed.1999) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).
In sum, Dr. Jeckle has not stated facts entitling him to relief for the alleged violations of the Public Disclosure Act and/or invasion of privacy.

B. Consumer Protection Act Cause of Action
The issue is whether the trial court erred in deciding no cause of action exists under CR 12(b)(6) against the law firms and lawyers based upon Dr. Jeckle's allegation that they violated the Consumer Protection Act, chapter 19.86 RCW (CPA), i.e., when they obtained and used the investigatory records of the Medical Quality Assurance Commission in aid of their private lawsuits against Dr. Jeckle.
The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020 (emphasis added). To establish a CPA claim, the plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, and (4) causes injury to the plaintiff's business or property. Guijosa v. Wal-Mart Stores, Inc., 144 Wash.2d 907, 917, 32 P.3d 250 (2001) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 785-93, 719 P.2d 531 (1986)). The Washington Supreme Court has held that "these business aspects of the legal profession [such as the billing and collection of fees charged and how the firm obtains clients] are legitimate concerns of the public which are properly subject to the CPA." Short v. Demopolis, 103 Wash.2d 52, 61, 691 P.2d 163 (1984).
Dr. Jeckle contends the defendants used the investigative file to contact his patients and attempt to persuade them to join a lawsuit against him. He asserts this conduct harmed him because at least some of those patients believed he had released their names and, in doing so, had violated their confidential relationship.[3]
Counsel for Lukins and Annis cites a Washington case for the proposition that adversaries of a lawyer's client cannot sue the lawyer under the CPA because the adversary has no consumer relationship with the lawyer. The case does not support counsel's argument. Instead, Demopolis v. Peoples Nat'l Bank, 59 Wash.App. 105, 119, 796 P.2d 426 (1990)[4] holds that "[s]ince an attorney's defamatory allegation [about the adversary] is neither an entrepreneurial nor a commercial *937 endeavor, it cannot give rise to a CPA claim."
However, counsels' citation to a line of cases out of Connecticut as standing for the above proposition is pertinent to our review here. They reveal what is probably the real reason why the courts do not permit this type of cause of action. Specifically, allowing a plaintiff to sue his or her adversary's attorney under a consumer theory infringes on the attorney-client relationship. The Connecticut court has "declined to recognize the right of th[e] client's opponent to sue the attorney under CUTPA [Connecticut Unfair Trade Practices Act] on the basis of the professional services the attorney had rendered for the client." Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 496, 656 A.2d 1009 (1995); see also Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 627 A.2d 374, 385 (1993).
In a recent case, the Connecticut court held a consumer protection action did not lie in a case involving an attorney's execution of a judgment against the plaintiff. Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Investors, L.P., 260 Conn. 766, 781-82, 802 A.2d 44 (2002). The court quoted an earlier decision as follows: "`Providing a private cause of action under CUTPA to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's independent professional judgment on his or her client's behalf.'" Id. at 783-84, 802 A.2d 44 (quoting Jackson, 627 A.2d at 384).
Dr. Jeckle's allegations involve the defendants' solicitation of new clients to join in a pending class action against Dr. Jeckle. As such, they relate to both the legal aspects and the business aspects of the defendants' law practice. Given the potential for affecting the existing attorney/client relationship, we conclude a CPA action does not lie under these facts. See Larsen, 232 Conn. 480, 656 A.2d 1009; Jackson, 225 Conn. 705, 627 A.2d 374; Suffield, 260 Conn. 766, 802 A.2d 44. Therefore, the superior court properly dismissed Dr. Jeckle's cause of action under the CPA for failure to state a claim upon which relief can be granted.

C. Uniform Health Care Information Act Cause of Action
The issue is whether the trial court erred in deciding no cause of action exists under CR 12(b)(6) based upon Dr. Jeckle's allegation the defendants violated the Uniform Health Care Information Act (UHCIA), chapter 70.02 RCW, when they obtained and used the investigatory records of the Medical Quality Assurance Commission in aid of their private lawsuits against Dr. Jeckle.
The UHCIA sets strict guidelines for the disclosure of patient information by a health care provider. RCW 70.02.050. A health care provider may disclose health care information without the patient's authorization to government health authorities, "when needed to determine compliance with state or federal licensure ... laws; or when needed to protect the public health." RCW 70.02.050(2)(a). If the information is sought pursuant to a discovery request or compulsory process, the attorney seeking the information "shall provide advance notice to the health care provider and the patient or the patient's attorney" so that the provider or the patient has time to move for a protective order. RCW 70.02.060(1). The sole remedy provided in the UHCIA is an action against a health care provider or facility for actual, but not consequential, damages. RCW 70.02.170(1), (2).
The defendants here are not health care providers. Hence, Dr. Jeckle has no remedy under the UHCIA against the lawyers and their law firms.

D. Immunity
The issue is whether the trial court erred in dismissing Dr. Jeckle's remaining tort claims under CR 12(b)(6) and concluding the attorneys and law firms have absolute immunity from liability for acts arising out of representing their clients.
Dr. Jeckle's remaining causes of action were for interference with his business relationship with his patients, outrage, infliction of emotional distress, and civil conspiracy. The defendants counter that the acts Dr.
*938 Jeckle relies upon in support of these causes of actionthe use of the Commission's file in his deposition and the alleged use of the patients' names obtained from the files were privileged. They cite McNeal v. Allen, 95 Wash.2d 265, 267, 621 P.2d 1285 (1980) for the proposition that "[a]llegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the relief sought."
Here, the complained of acts related to and were pertinent to the lawsuits the attorneys had filed against Dr. Jeckle. Indeed, one of the cases cited by the defendants, Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling, 535 N.W.2d 653, 657-58 (Minn.App.1995), cert. denied, 517 U.S. 1221, 116 S.Ct. 1850, 134 L.Ed.2d 950 (1996), is similar to the appeal here. There, the court held a letter sent by an attorney to solicit additional plaintiffs for his client's potential lawsuit was protected by the judicial action privilege and could not form the basis for a defamation action. Accordingly, we hold the court properly dismissed Dr. Jeckle's remaining claims under CR 12(b)(6).

E. Sanctions
The issue is whether the trial court erred in imposing sanctions of $27,034.55 in costs and reasonable attorney fees against Dr. Jeckle for bringing the claims that were dismissed under CR 12(b)(6).
RCW 4.84.185 provides, as follows:
In any civil action, the court ... may, upon written findings ... that the action ... was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action.
The decision to award attorney fees as a sanction for a frivolous action is left to the discretion of the trial court, and the court's decision will not be disturbed absent a showing of abuse of discretion. Clarke v. Equinox Holdings, Ltd., 56 Wash.App. 125, 132, 783 P.2d 82, review denied, 113 Wash.2d 1001, 777 P.2d 1050 (1989). Under RCW 4.84.185, a court cannot pick and choose among those aspects of an action that are frivolous and those that are not. Biggs v. Vail, 119 Wash.2d 129, 136, 830 P.2d 350 (1992). The action must be viewed in its entirety and only if it is frivolous as a whole will an award of fees be appropriate. Id. at 133-37, 830 P.2d 350. An action is frivolous if it "cannot be supported by any rational argument on the law or facts." Clarke, 56 Wash.App. at 132, 783 P.2d 82.
Dr. Jeckle relies upon Collinson v. John L. Scott, Inc., 55 Wash.App. 481, 488, 778 P.2d 534 (1989), which held that the superior court did not err when it refused to award attorney fees against the plaintiffs, even though it dismissed their action on summary judgment, because the case presented an issue of first impression. Here, the issue of whether Dr. Jeckle could sue his adversary's attorney for a violation of the CPA is an issue of first impression.
Although we concluded the CPA does not apply because of the potential impact on the existing attorney/client relationship, Dr. Jeckle's arguments were not frivolous. Specifically, the cases respondents cited from Washington were not dispositive. We decided the rationale of the Connecticut cases was persuasive; i.e., such suits are against public policy if they interfere with the attorney/client relationship. But the public policy argument does not render the CPA argument frivolous; rather, it provides a rationale for not applying the CPA where its application would adversely impact a relationship that society views as worthy of protection.
Therefore, the award of any sanctions under RCW 4.84.185 is unwarranted, even for the other, frivolous causes of action. Biggs, 119 Wash.2d at 133-37, 830 P.2d 350.
We reverse the superior court's finding that Dr. Jeckle's action was frivolous and vacate its sanction award.

F. Dr. Jeckle's Claim for Costs
Dr. Jeckle requests costs. Since Dr. Jeckle's allegations fail to state any cause of action, he is not the prevailing party here and cannot collect costs.

*939 G. Attorney Fees on Appeal
The respondents request attorney fees for a frivolous appeal. The criteria for a frivolous appeal are set out in Streater v. White, 26 Wash.App. 430, 434, 613 P.2d 187 (1980):
In determining whether an appeal is brought for delay under this rule [RAP 18.9], our primary inquiry is whether, when considering the record as a whole, the appeal is frivolous, i.e., whether it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal.
In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay justifying the imposition of terms and compensatory damages, we are guided by the following considerations: (1) a civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; [and] (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and is so totally devoid of merit that there was no reasonable possibility of reversal.
(Citations omitted.)
In light of our reasoning in rejecting sanctions against Dr. Jeckle for a frivolous suit, we reject the respondents' request to determine this entire appeal frivolous.
Dismissals under CR 12(b)(6) affirmed; sanctions for fees and costs reversed.
WE CONCUR: KURTZ and KATO, JJ.
NOTES
[1] Dr. Jeckle also cites WAC 292-100-070, relating to activities of the executive ethics board, but Dr. Jeckle's investigation does not concern that board.
[2] We note Dr. Jeckle's argument that Mr. Crotty did not make a written request for the Commission's investigative file on Dr. Jeckle. He cites WAC 246-08-420(3), which states that public disclosure requests are to be submitted to the Department of Health in writing. Nevertheless, whether Mr. Crotty made his request in writing is not material. The Public Disclosure Act does not provide any remedy against Mr. Crotty for the alleged violation.
[3] Dr. Jeckle's complaint alleged, as follows: "Defendants Crotty, Tinglum, Shallbetter and others obtained confidential medical records and in the course of their business and, upon information and belief, used these confidential medical records to solicit Dr. Jeckle's patients to file suit against Dr. Jeckle. The Defendants used these records in the pursuit of trade and commerce ... for their own financial benefit." Clerk's Papers (CP) at 50. Also, "[t]he defendants came into unlawful possession of the confidential records of 3671 patients which the defendants then used to recruit these same patients into lawsuits against Dr. Jeckle.... As a consequence of the defendant's [sic] wrongful conduct, most of Dr. Jeckle's patients no longer come to Dr. Jeckle for any type of medical care." CP at 55. For purposes of CR 12(b)(6), the declaration does not add anything to the complaintthe allegations are viewed as true for purposes of a CR 12(b)(6) motion.
[4] Note that this case is not the same case cited earlier in this opinion for the proposition that the CPA applies to certain aspects of the practice of law. See Short v. Demopolis, 103 Wash.2d 52, 61-62, 691 P.2d 163 (1984).