106 P.3d 836 (2005)
Marcy FISHER, on her Behalf and on Behalf of a Class of Similarly Situated Plaintiffs, Appellant,
v.
The STATE of Washington, by and through the DEPARTMENT OF HEALTH, and/or by and through the Medical Quality Assurance Commission, and/or by and through the Attorney General, Respondent.
No. 22259-4-III.
Court of Appeals of Washington, Division 3, Panel Eight.
February 15, 2005.
*837 Robert A. Dunn, Dunn & Black PS, Daniel E. Huntington, Richter-Wimberley PS, Spokane, WA, for Appellant.
John C. Riseborough, Laura D. McAloon, Attorneys at Law, Spokane, WA, for Respondent.
SWEENEY, A.C.J.
The essential question in this dispute is whether a patient whose medical records have been disseminated in violation of the apparent purpose of Washington's Uniform Health Care Information Act, chapter 70.02 RCW (Act), can sue state agencies including the Department of Health and the Office of the Attorney General.
Both (the attorney general's office through the Department of Health) received health care information about the plaintiffs as part of their investigation of a complaint against a physician. The attorney general's office then gratuitously handed this information over to a private attorney, an attorney suing the same doctor on behalf of other patients. But the remedies provision of the Act provides that any aggrieved person may sue "a health care provider or facility." RCW 70.02.170(1). The government agencies here are neither health care providers nor facilities. Moreover, this language is a departure from the more expansive language found in the model uniform health care information act. We therefore conclude, based on this unambiguous language, that plaintiffs cannot sue the Department of Health or the Office of the Attorney General under the Act. We affirm the trial court's dismissal. We also affirm the trial court's summary dismissal of Marcy Fisher's common law causes of action.

*838 FACTS
Attorney Robert Crotty complained to the Washington State Medical Quality Assurance Commission about Spokane physician Milan Jeckle. The Assurance Commission is the investigative arm of the Department of Health. The Assurance Commission then investigated Dr. Jeckle's compliance with state licensing rules. It ordered Dr. Jeckle to turn over patient records. He did. Those records included lists and medication sheets, which contained over 3,000 dated entries of patient names and drugs prescribed. Federal drug enforcement regulations require these medication sheets. These sheets included information on Marcy Fisher.
The Department of Health turned the case over to the Office of the Attorney General once the case reached the hearing stage. This is standard practice.
Meanwhile, Mr. Crotty filed a Public Disclosure Act request with the Department of Health for "the complete file regarding Milan Jeckle, M.D." Clerk's Papers (CP) at 110, 118. The Department of Health responded that it could not release material from an open complaint file. Instead it sent Mr. Crotty 32 documents from several closed files on Dr. Jeckle.
But the attorney general's office sent Mr. Crotty, upon his request, the complete file. Mr. Crotty copied the file for a Seattle law firm that was also representing patients suing Dr. Jeckle. During Dr. Jeckle's deposition by Mr. Crotty, it became apparent that Mr. Crotty was in possession of these patient records. Mr. Crotty's records and those of the Seattle firm were eventually turned over to a court-appointed discovery master.
Dr. Jeckle told his patients, including Ms. Fisher, that their patient records had been given to Mr. Crotty.
Ms. Fisher sued the Department of Health and the Office of the Attorney General for damages. She alleged violations of the Act and common law, including invasion of privacy by publication and by intrusion, negligent infliction of emotional distress, and the tort of outrage. The court certified her action as to all patients on these lists as a class action.
The State moved for summary judgment on April 5, 2002. It argued that the Department of Health complied with chapter 70.02 RCW. The court agreed and dismissed all claims against the health department. The court also concluded that each common law claim lacked proof of an essential element and dismissed them. The court, however, first rejected the State's arguments that the attorney general's office was not liable because (1) the Act did not provide a cause of action against government agencies; (2) the attorney general's office was not an agency for the purposes of the Act; and (3) it enjoyed prosecutorial immunity in any event. But the case remained open in April 2003 for reasons not apparent from the record. The State again moved to dismiss the Health Care Information Act claim against the attorney general's office, this time based on Murphy v. State.[1] The court concluded that the Murphy case was dispositive and dismissed Ms. Fisher's remaining claim.

DISCUSSION
Our interpretation of this statute is de novo. Rettkowski v. Dep't of Ecology, 128 Wash.2d 508, 515, 910 P.2d 462 (1996).
A statute is ambiguous when it can reasonably be interpreted in more than one way. Kilian v. Atkinson, 147 Wash.2d 16, 20-21, 50 P.3d 638 (2002). But when the meaning of statutory language is plain, the statute is not ambiguous. The only permissible interpretation is that which gives effect to the statute's plain language. Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). Said another way, we assume the legislature means exactly what it says. Berger v. Sonneland, 144 Wash.2d 91, 105, 26 P.3d 257 (2001). We will not ignore definitions included in the statute by the legislature. Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004). Nor do we search for ambiguity by imagining alternative interpretations of clear language. *839 W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wash.2d 599, 608, 998 P.2d 884 (2000).

UNIFORM HEALTH CARE INFORMATION ACT
The Act prevents the unauthorized dissemination of health care information by health care providers. RCW 70.02.020. "Health care information" is information, in any form, that "identifies or can readily be associated with the identity of a patient" and directly relates to health care. RCW 70.02.010(6). The "med sheets" here are health care information. CP at 180.
The provisions of the Act in dispute read: (1)
(1) A person who has complied with this chapter may maintain an action for the relief provided in this section against a health care provider or facility who has not complied with this chapter.
(2) The court may order the health care provider or other person to comply with this chapter.
RCW 70.02.170 (emphasis added).
A "health care provider" is a person who is licensed to provide health care. RCW 70.02.010(7). A "health care facility" is a place where a health care provider provides health care. RCW 70.02.010(5). The term "person" is a catch-all definition. So, for example, government agencies are "persons," as are any other undefined legal or commercial entities. RCW 70.02.010(11).
The question here is whether government agencies are then subject to these remedy provisions. They are not.
RCW 70.02.170(1) creates a right of action. It says who may sue whom: "A person who has complied with this chapter may maintain an action for the relief provided in this section against a health care provider or facility who has not complied. . . ." By its plain language, then, RCW 70.02.170(1) creates a right of action solely against a health care provider or facility who has not complied. But it does not set out a right of action against any "other person," including a government agency.
RCW 70.02.170(2) spells out the available remedies. It says the court may award limited damages and order a health care provider or other person to comply with the Act.
Ms. Fisher contends that making "other persons" subject to orders of the court in subsection (2) requires us to read "other persons" into subsection (1) as potential defendants. To do otherwise, she contends, is inconsistent with the legislative purpose as set forth in the preamble and the substantive provisions regulating agency actions.
The State responds that the standing created in subsection (1) is plain, and that subsection (2) can be reconciled. The term "persons" is not the inclusive term as defined. Rather, it means individuals associated with a health care provider who would be subject to any injunctive orders imposed on the provider. Because the remedy provisions are not ambiguous, the State contends, they are not subject to judicial construction.
We recently interpreted the Act's civil remedy provisions in a related case. In Jeckle v. Crotty, Dr. Jeckle sued Mr. Crotty for violating the Act for the release of these same records. Jeckle v. Crotty, 120 Wash.App. 374, 85 P.3d 931, review denied, 152 Wash.2d 1029, 103 P.3d 201 (2004). We held that the plain language of the statute does not provide Dr. Jeckle with a right of action because an attorney is not a health care provider or facility. Id. at 385-86, 85 P.3d 931.
We cannot rewrite the Act. The language is unambiguous.
And, if that were not enough, the legislature changed this language from the original (and more expansive) language of the uniform law. The uniform law creates a right of action for any aggrieved person to seek the relief provided. UNIF. HEALTH-CARE INFORMATION ACT § 8-103(a), 9 Part 1B U.L.A. 230 (1999) ("A person aggrieved by a violation of this [Act] may maintain an action for relief as provided in this section."). It does not restrict the class of potential defendants. Our legislature deleted this open-ended language and substituted the more restrictive language at issue here. LAWS OF 1991, ch. 335. And this is important. Legislative changes to the *840 language of a uniform law lead "conclusively" to the view that the language was changed in order to effect the resulting substantive change. State v. Cleppe, 96 Wash.2d 373, 378, 635 P.2d 435 (1981). The substituted language, not the rejected language, then expresses the true legislative intent. Id. at 380, 635 P.2d 435.
After changing subsection (1), the legislature left the remedies unchanged in subsection (2), which provides an injunctive remedy against "other persons." RCW 70.02.170(2). Ms. Fisher's point is well taken that the identity of the persons subject to orders by the court in subsection (2) is mysterious if persons cannot be brought before the court in subsection (1). But conflicts in uniform laws created when the legislature modifies one provision but not another must be corrected by the legislature, not us. Cleppe, 96 Wash.2d at 380, 635 P.2d 435. We are bound to presume that the legislature inserted limiting language where none previously existed because it intended to impose the resulting limitation. The plain language of RCW 70.02.170(1) then creates a right of action solely against health care providers and facilities.
There may well be a constitutional dimension to Ms. Fisher's claims but it is neither briefed nor argued and so we will not address it.

COMMON LAW CAUSES OF ACTION
We review summary judgments de novo and perform the same inquiry as the trial court. Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56(c). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party. Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). The State bears the burden of showing no genuine dispute exists as to any material facts. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998). Questions of fact may be determined as a matter of law when reasonable minds can reach only one conclusion. Hartley v. State, 103 Wash.2d 768, 775, 698 P.2d 77 (1985).

Invasion of Privacy by Intrusion on Seclusion
Washington recognizes a common law cause of action for invasion of privacy. Reid v. Pierce County, 136 Wash.2d 195, 206, 961 P.2d 333 (1998).
Invasion of privacy by intrusion consists of a deliberate intrusion, physical or otherwise, into a person's solitude, seclusion, or private affairs. The intruder must have acted deliberately to achieve the result, with the certain belief that the result would happen. Estate of Jordan v. Hartford Accident & Indem. Co., 120 Wash.2d 490, 505-06, 844 P.2d 403 (1993). Intent is thus an essential element. Id. When the intruder is the government, the intrusion is a violation of article I, section 7 of our constitution. It prohibits the government from disturbing any person in his or her private affairs or effects without authority of law. Intent is not a factor.
Ms. Fisher presented the facts here as an intentional personal tort. The trial court then ruled, correctly, that Ms. Fisher could not establish the intent element. No finder of fact could find that the attorney general's office deliberately embarked on a course of conduct guaranteed to result in an unlawful disclosure with the intent of causing distress or embarrassment to any identifiable person. The court correctly dismissed this cause of action.

Invasion of Privacy by Publication
A second form of the common law tort of invasion of privacy requires publicizing the private affairs of another if the matter publicized would be highly offensive to a reasonable person. Reid, 136 Wash.2d at 205, 961 P.2d 333; Restatement (Second) of Torts § 652D (1977). Ms. Fisher argues that the disclosure of the Dr. Jeckle file by the attorney general's office to Mr. Crotty was such a publication. The court ruled that what happened here was not a "publication." Ms. Fisher acknowledges that publicity for the purposes of section 652D means communication to the public at large so that the *841 matter is substantially certain to become public knowledge, and that communication to a single person or a small group does not qualify. Appellant's Br. at 32-33 (citing Restatement, supra, § 652D, cmt. a). But she relies on cases in which the highly offensive nature of the material outweighed the limited scope of the publicity. In Reid, for example, a former coroner's employee displayed autopsy photographs to his friends. Reid, 136 Wash.2d at 199-200, 961 P.2d 333.
But the inclusion of a name, with no additional identifying information on a list of thousands, and simply naming drugs prescribed, does not compare to the highly offensive communications cited by her as comparable.
Again, people enjoy constitutional protections from government invasion of their right to privacy arising from the First, Fourth, Fifth, Ninth, and Fourteenth Amendments as well as the fundamental concept of liberty. Whalen v. Roe, 429 U.S. 589, 598 n. 23, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); Borucki v. Ryan, 827 F.2d 836, 839-40 (1st Cir.1987). But Washington does not recognize the interest in nondisclosure of personal information as a fundamental right. And so we apply the rational basis test on a case-by-case basis. The disclosure must serve a legitimate state interest and must be no greater than is reasonably necessary. O'Hartigan v. Dep't of Pers., 118 Wash.2d 111, 117, 821 P.2d 44 (1991).
Here, the government may have had no legitimate interest in the dissemination of this private information sufficient to outweigh Ms. Fisher's protected privacy interest. But she must show that the extent of the dissemination outweighed her own privacy interest. The court correctly ruled that the element of publication constituting an invasion of privacy was not established as a matter of law.

Outrage
Finally, Ms. Fisher failed to establish the elements of the common law tort of outrage. The tort of outrage requires a showing of extreme and outrageous conduct and the intentional or reckless infliction of emotional distress. Rice v. Janovich, 109 Wash.2d 48, 61, 742 P.2d 1230 (1987). The plaintiff must establish actual severe emotional distress. Reid, 136 Wash.2d at 202, 961 P.2d 333.
Ms. Fisher argues that these elements are inherently factual, and only a jury can determine whether the conduct of the attorney general's office was outrageous and whether the subjective symptoms Ms. Fisher described evidenced severe emotional distress.
But again, viewing the record in the light most favorable to Ms. Fisher, she can establish no more than negligence. The assistant attorney general did not know the file contained medical information about persons other than Mr. Crotty's own clients. Ms. Fisher's evidence of emotional distress was, moreover, entirely subjective and the symptoms claimed were not severe. She had trouble sleeping and had been nervous and upset. She did not see a doctor about her symptoms.
We affirm the court's summary dismissal.
WE CONCUR: KURTZ and BROWN, JJ.
NOTES
[1] Murphy v. State, 115 Wash.App. 297, 62 P.3d 533 (2003), cert. denied, ___ U.S. ___, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004).