**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
5/22/2023
Court of Appeals
Division I
State of Washington

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| SUBCONTRACTING CONCEPTS CT, INC., a Delaware corporation, | No. 83748-6-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| FERNANDA LEMOS DUARTE MANZI and LEONARD MANZI, and the marital community comprised thereof, | |
| Respondents. | |

MANN, J. — RCW 51.04.060 prohibits workers or employers from executing a contract that waives benefits under the Industrial Insurance Act (IIA), Title 51 RCW. Any contract or agreement to the contrary is "pro tanto void." After Fernanda Manzi (Manzi) was injured while working, she named Subcontracting Concepts CT, Inc., (SCI), as a possible employer in her claim for IIA benefits. SCI sued Manzi for breach of contract based on an employment agreement Manzi signed that purported to waive her right to IIA benefits.[1] The trial court dismissed SCI's lawsuit finding the agreement was void under RCW 51.04.060. The trial court awarded Manzi her attorney fees and costs

---

[1] SCI also sued Fernanda Manzi's husband Leonard Manzi. For clarity, we refer to Fernanda as Manzi throughout the rest of the opinion.

No. 83748-6-I/2

under the frivolous lawsuit statute, RCW 4.84.185.  SCI appeals.  Finding no error, we

affirm and award Manzi's attorney fees on appeal.[2]

I.

Manzi was looking for work and in August 2015 learned from an acquaintance

about a potentially available delivery route with OnTrac.[3]  Manzi spoke with an OnTrac

driver who gave Manzi's contact information to his boss, Khalid Nazir.  Manzi then

spoke to and met with Nazir.  Unbeknownst to Manzi, Nazir did not work for OnTrac.

Instead, Nazir ran a separate company, Axis Nexus, with a warehouse directly next to

an OnTrac warehouse in Kent, Washington.  When they met, Nazir took Manzi into the

OnTrac warehouse and introduced her to an OnTrac employee who would train Manzi.

After the meeting, Manzi was e-mailed a link to CBDriver.com to complete an

application to work for Nazir.  Manzi's native language is Brazilian Portuguese.  The

website and forms were in English.  Once she set up an account, there were several

contracts and documents for Manzi to complete.  The documents were created by SCI.

Manzi never met with anyone from SCI and "did not understand what [SCI] was."  SCI is

a third-party administrator that provides payroll, insurance, and other administrative

services to delivery companies.

The SCI forms included an owner/operator agreement (Agreement).  The

Agreement is 5 pages long, typed in small font, and made up of 27 numbered

paragraphs, including the sixth paragraph at issue:

> The Owner/Operator agrees that no employer/employee relationship is
> created under this Agreement as a result of the relationship between SCI

[2] The Department of Labor and Industries submitted an amicus brief in support of the trial court's decision finding that RCW 54.04.060 prohibits workers or employees from contracting out of IIA benefits.

[3] Express Messenger Systems, Inc., dba OnTrac.

No. 83748-6-I/3

> and the Owner/Operator or its Customers . . . Owner/Operator further understands and agrees that the Owner/Operator . . . is not covered under any unemployment, disability or workers' compensation insurance policy of SCI or the Owner/Operator's customers.

Manzi electronically signed the Agreement. Manzi also electronically signed an independent contractor acknowledgment form that stated: "You are not entitled to workers' compensation." The forms were written in English, and were not explained to Manzi.

After she completed the forms, Nazir asked Manzi to obtain a taxpayer identification number from the IRS. Manzi returned to Nazir's warehouse, where Nazir had another employee drive Manzi to a Washington State Department of Revenue (DOR) office. That employee told DOR that Manzi was another OnTrac driver and helped Manzi obtain a Universal Business Identifier number for her own business—Manzi Delivery.

Nazir then gave Manzi a driver ID badge with the OnTrac logo. The badge allowed Manzi to open the OnTrac warehouse door. Manzi began making deliveries from the OnTrac warehouse using her own vehicle. Manzi's paychecks were issued by SCI.

In early December 2015, Manzi was injured while delivering packages. Manzi filed for workers' compensation benefits with the Department of Labor and Industries (Department) under the IIA. Because Manzi was under the impression that she worked for OnTrac, Manzi listed OnTrac as her employer. The Department later assigned Axis Nexus as the employer for Manzi's claim. Axis Nexus denied that it was Manzi's employer and appealed to the Board of Industrial Appeals (Board).

-3-

No. 83748-6-I/4

Manzi moved to join SCI and OnTrac, claiming "there are three potential employers in this case, owing in large part to the intentionally convoluted system of logistics contracting utilized by [OnTrac]." The Board granted Manzi's motion. Following joinder, the parties stipulated to an order allowing Manzi's claim and designating Axis Nexus as Manzi's employer. The Board then issued a decision allowing Manzi's workers' compensation claim against Axis Nexus and entitling Manzi to medical treatment and other benefits.

SCI then sued the Manzi and her husband for breach of contract. SCI alleged Manzi materially breached the sixth paragraph of the Agreement and independent contractor acknowledgment form by seeking to join SCI as a purported employer in her workers' compensation claim.

Manzi moved for summary judgment arguing, in part, that the sixth paragraph of the Agreement was void because RCW 51.04.060 prohibits employers or workers from contracting out of IIA benefits. Manzi asserted that RCW 51.04.060 applies to workers, employers, and third parties and voids any contract if the contract attempts to circumvent the provisions of the IIA. The trial court agreed with Manzi, granting summary judgment and concluding that "Manzi's contract with Plaintiff Subcontracting Concepts is partially void under RCW 51.04.060."[4]

The trial court awarded Manzi reasonable attorney fees under the frivolous lawsuit statute, RCW 4.84.185.

SCI appeals.

---

[4] The trial court orally granted Manzi's motion for summary judgment and awarded Manzi reasonable attorney fees on June 9, 2021. A final judgment was entered on February 11, 2022.

-4-

No. 83748-6-I/5

II.

SCI argues that RCW 51.04.060 only applies when there is an employment relationship between an employer and a worker. SCI asserts that because there was no employment relationship between SCI and Manzi, the IIA does not apply. We disagree.

We review summary judgment decisions de novo. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). "Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Int'l Marine Underwriters, 179 Wn.2d at 281. We "must view the evidence, and all reasonable inferences from the evidence, in the light most favorable to the nonmoving party, and the motion should be granted if a reasonable person could reach only one conclusion." Dunnington v. Virginia Mason Med. Ctr., 187 Wn.2d 629, 638, 389 P.3d 498 (2017).

We also review issues of statutory interpretation de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2001). We begin with "the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." Lenander v. Dep't of Ret. Sys., 186 Wn.2d 393, 403, 377 P.3d 199 (2016).

In enacting the IIA, the legislature directed "sure and certain relief for workers, injured in their work." RCW 51.04.010. The purpose of the IIA is captured in the legislative findings in RCW 51.04.062:

No. 83748-6-I/6

> Washington state's workers' compensation system should be designed to focus on achieving the best outcomes for injured workers. Further, the legislature recognizes that controlling pension costs is key to a financially sound workers' compensation system for employers and workers. To these ends, the legislature recognizes that certain workers would benefit from an option that allows them to initiate claim resolution structured settlements in order to pursue work or retirement goals independent of the system, provided that sufficient protections for injured workers are included.

The IIA "shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. The liberal construction of the IIA demands that all doubts be resolved in favor of coverage. Dep't of Labor & Indus. v. Lyons Enters., Inc., 185 Wn.2d 721, 734, 374 P.3d 1097 (2016).

Under RCW 51.04.060, neither a worker nor employer can contract out of coverage under the IIA, and employers cannot hamper efforts of workers to access the protections:

> No employer or worker shall exempt himself or herself from the burden or waive the benefits of this title by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void.

 "Thus, no employer or employee may 'exempt himself [or herself] from the burdens which [the Act] imposes, nor by contract waive the benefits thereof in the sense that he can bar himself from the right to claim its benefits.'" Mandery v. Costco Wholesale Corp., 126 Wn. App. 851, 854, 110 P.3d 788 (2005) (quoting Shaughnessy v. Northland S.S. Co., 94 Wash. 325, 329, 162 P. 546 (1917)).

The parties concede that there was no employment relationship between SCI and Manzi. But nothing in the plain language of RCW 51.04.060 requires that there be

No. 83748-6-I/7

an employment relationship for the statute to apply. The statute prohibits an employer or worker from contracting or agreeing to waive benefits. SCI concedes that it is an employer for various people in its payroll business. And there is no dispute that Manzi was a worker. Manzi's claim as a worker was allowed when Axis Nexus was designated as her employer. Under a plain reading of RCW 51.04.060, Manzi was a worker and could not exempt herself from the burdens or benefits of the IIA. Any contract that purported to exempt Manzi from the IIA was pro tanto void. Thus, the trial court did not err when it voided the sixth paragraph of the Agreement. And because SCI's breach of contract claim was based on that provision, the trial court properly dismissed SCI's lawsuit on summary judgment.

This analysis is in alignment with other cases analyzing RCW 51.04.060. For instance, in Mandery, Susan Mandery signed an employment contract with Warehouse Demo Services, Inc., (WDS)—a company that provided services to Costco. 126 Wn. App. at 852. The contract included a clause prohibiting Mandery from looking to any third parties for relief if she was injured on the job. Mandery, 126 Wn. App. at 852. After Mandery was injured while working at Costco, she sought and obtained workers' compensation benefits under the IIA. Mandery then filed a third-party suit against Costco seeking recovery for her injuries. Mandery, 126 Wn. App. at 853. Costco argued that Mandery had waived her negligence claim by signing the employment agreement. Mandery, 126 Wn. App. at 853. The court disagreed, holding that "under the express terms of RCW 51.04.060, Mandery cannot waive by contract her right to pursue these potential statutory benefits." Mandery, 126 Wn. App. at 855. Thus, the contract provision was void. Mandery, 126 Wn. App. at 855.

-7-

No. 83748-6-I/8

The Board also consistently interprets RCW 51.04.060 as prohibiting a worker from waiving benefits he or she is, or may be, entitled to.  See In re Martinez, No. 14-12018, 2015 WL 4153109, at *5 (Wash. Bd. of Indus. Ins. Appeals June 25, 2015) (a worker could not waive benefits he was entitled to no matter what his resignation letter said); In re Johnson, No. 17-12304, 2018 WL 3413620, at *3 (Wash. Bd. of Indus. Ins. Appeals May 29, 2018) (a worker who signed a volunteer services agreement acknowledging that she would not receive wages could not exempt herself under RCW 51.04.060).  Similarly, Manzi could not waive by contract her right to pursue potential statutory benefits.

This outcome also reflects the policy behind the IIA to provide "sure and certain relief" for injured workers.  RCW 51.04.010.

> It is out of accord with the spirit and purpose of the compensation law that an employee when injured be put to the task of guessing who his employer is to whom he must look for compensation, and be bandied about from one to another, so that in the end all may escape.

Jackson v. Harvey, 72 Wn. App. 507, 519, 864 P.2d 975 (1994) (citing Lee v. Oreon E. & R.G. Scott Realty Co., 96 S.W.2d 652, 654-55 (Mo. Ct. App. 1936)).  Because the broad policy behind the IIA is to protect workers, it would be incongruous to allow for a breach of contract claim against a worker for signing a provision that is pro tanto void.

SCI relies mainly on Robinson v. Dep't of Lab. & Indus., 181 Wn. App. 415, 326 P.3d 744 (2014), to support its claim that the IIA does not apply to a nonemployment contract.  In Robinson, a free-agent football player who was injured while participating in a minicamp tryout for the Seattle Seahawks, sought workers' compensation coverage under the IIA.  181 Wn. App. at 417.  Under the IIA, a claimant must "prove he is a

-8-

No. 83748-6-I/9

'worker injured in the course of his or her employment'" to be eligible for benefits. Robinson, 181 Wn. App. at 426 (quoting RCW 51.30.010). Because Robinson was not an employee of the Seahawks, we concluded that he was not eligible for IIA benefits. Robinson, 181 Wn. App. at 434. Thus, Robinson holds only that a claimant must be an employee to obtain IIA benefits. Robinson did not cite or discuss the meaning of RCW 51.04.060 and whether the statute allows a worker to enter a contract waiving coverage under the IIA. Robinson provides no support for SCI's position.

Because the plain language of RCW 51.04.060 prohibits an employee or employer from entering a contract that waives workers' compensation benefits under the IIA, the trial court did not err in granting summary judgment for Manzi.

III.

After finding SCI's breach of contract claim was frivolous under RCW 4.84.185, the trial court awarded Manzi $64,900.50 for attorney fees and $1,301.67 for costs incurred opposing SCI's claim. SCI argues that the trial court erred because its breach of contract claim against Manzi was not frivolous and that the trial court failed to make appropriate findings. We disagree.

A.

A trial court may award attorney fees in a civil action if the award is authorized by statute, agreement of the parties, or a recognized equitable ground. In re Marriage of Greenlee, 65 Wn. App. 703, 707, 829 P.2d 1120 (1992). RCW 4.84.185 authorizes a trial court to award reasonable attorney fees incurred in opposing an action found "frivolous and advanced without reasonable cause." The statute requires that a lawsuit, in its entirety, must be frivolous. Biggs v. Vail, 119 Wn.2d 129, 133, 830 P.2d 350

-9-

No. 83748-6-I/10

(1992). The purpose of the statute is to "discourage frivolous lawsuits and to compensate the targets of such lawsuits for fees and expenses incurred in fighting meritless cases." Biggs, 119 Wn.2d at 137. Before awarding attorney fees under RCW 4.84.185, the court must make written findings that the entire lawsuit is frivolous and advanced without reasonable cause. State ex rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 901, 969 P.2d 64 (1998). "Complaints which are grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law are not [frivolous or] baseless claims." Bryant v. Joseph Tree Inc., 119 Wn.2d 210, 219-20, 829 P.2d 1099 (1992).

We review sanctions awarded for frivolous actions for abuse of discretion. Kilduff v. San Juan County, 194 Wn.2d 859, 874, 453 P.3d 719 (2019).

The trial court granted Manzi's request for an award of attorney fees and litigation costs under RCW 4.84.185. In doing so, the trial court found that "RCW 51.04.060 clearly and unambiguously voids any contractual terms which would vitiate a worker's rights or lessen an employer's burdens under the [IIA]." The trial court explained:

> SCI's claims cannot be supported by any rational argument on the law or facts because RCW 51.04.060 clearly and unambiguously voids contractual terms which alter the parties' rights under Title 51. SCI's sole claim of breach of contract stems from Ms. Manzi's joinder of SCI to the Board proceedings regarding her workers' compensation claim. To hold Ms. Manzi in breach of contract would require the court to interpret the contract in a manner which would effectively punish Ms. Manzi for exercising her rights under the Industrial Insurance Act.

Because we agree that RCW 51.04.060 is unambiguous, we cannot conclude that the trial court abused its discretion in finding SCI's lawsuit frivolous.

-10-

No. 83748-6-I/11

SCI cites <u>Collinson v. John L. Scott</u>, 55 Wn. App. 481, 488, 778 P.2d 534 (1989), <u>Jeckle v. Crotty</u>, 120 Wn. App. 374, 387, 85 P.3d 931 (2004), and <u>Granville Condo. Homeowners Ass'n v. Kuehner</u>, 177 Wn. App. 543, 557, 312 P.3d 702 (2013), for the proposition that attorney fees and costs are not appropriate under RCW 4.84.185 in a case of first impression. SCI's reliance is misplaced. In both <u>Collinson</u> and <u>Granville</u>, the trial courts exercised their discretion not to award sanctions and the appellate court agreed. But here, the trial court exercised its discretion to award fees after concluding that RCW 51.04.060 plainly barred SCI's lawsuit against Manzi. We will not disturb the trial court's exercise of discretion.

In <u>Jeckle</u>, the trial court awarded sanctions under RCW 4.84.185 after concluding that most of the plaintiff's claims were frivolous. 120 Wn. App. at 387. The Court of Appeals reversed after concluding that one of the claims—a Consumer Protection Act[5] claim—brought against a law firm, was not frivolous because the cases the parties relied on were not dispositive. <u>Jeckle</u>, 120 Wn. App. at 387-88. But here, the trial court found that RCW 51.04.060 barred SCI's only cause of action—breach of contract. We agree with the trial court. While there are no reported decisions interpreting RCW 51.04.060, the plain language of the statute clearly barred SCI's contract action against the Manzis because the sixth paragraph of the Agreement was pro tonto void.

B.

We next address SCI's claims that the trial court failed to make sufficient findings in support of the amount of attorney fees and costs awarded. The amount of fees awarded under RCW 4.84.185 is reviewed for abuse of discretion. <u>Highland Sch. Dist.</u>

---

[5] Ch. 19.86 RCW.

-11-

No. 83748-6-I/12

No. 203 v. Racy, 149 Wn. App. 307, 314-15, 202 P.3d 1024 (2009). The court determines reasonable attorney fees by calculation of the "'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 224 Westlake, LLC v. Engstrom Props., LLC, 169 Wn. App. 700, 734, 281 P.3d 693 (2012).

> To establish the reasonableness of the fee award, the attorney's documentation of the work performed must satisfy at least a minimum level of detail. "The court must limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time."

224 Westlake, LLC, 169 Wn. App. at 734-35 (quoting Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983)).

Manzi's attorney submitted records detailing the number of hours expended on tasks related to this case and the hourly cost for each task. The trial court found that the lodestar method was the appropriate method for calculating fees in this case, and that the hourly rates for services sought by Manzi's counsel were reasonable. The trial court also found that the time spent on the case was reasonable, however, the trial court declined to award fees or costs for time spent on a motion for discretionary review and on the previous case before the trial court that was voluntarily dismissed by SCI. Thus, the trial court reduced Manzi's request for attorney fees by $6,145.50 and costs by $77.28. The trial court also found:

> [N]o further reduction of fees and costs would be appropriate in this case. Given the purpose of RCW 4.84.185—deterrence and compensation—the Court finds that [Manzi] should be reimbursed for all attorney fees and costs they seek aside from those associated with the motion for discretionary review to the Court of Appeals or the previous case before this Court voluntarily dismissed by [SCI].

-12-

No. 83748-6-I/13

We find no abuse of discretion—the trial court had an objective basis for the award and sufficiently explained that basis.

C.

Both SCI and Manzi request attorney fees and costs on appeal. This court has discretion to award attorney fees on appeal under RAP 18.1(a) where authorized by applicable law. RAP 18.9(a) permits an appellate court to award a party attorney fees as sanctions, terms, or compensatory damages when the opposing party files a frivolous appellate action. Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004); RAP 18.9(a). An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal. Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 170 Wn.2d 577, 580, 245 P.3d 764 (2010).

As discussed above, the trial court properly found that SCI's claim against Manzi was frivolous under RCW 4.84.185. On appeal, reasonable minds could not differ on whether the sixth paragraph of the Agreement was pro tanto void under RCW 51.04.060. Thus, subject to compliance with RAP 18.1, we award Manzi her attorney fees on appeal.

We affirm and award Manzi's attorney fees on appeal.

-13-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83748-6-I/14

Mann, J.

WE CONCUR:

Hazelrigg, A.C.J.

Smith, C.J.