IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33009-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REBECCA LOUISE PRESLER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Rebecca Presler appeals her conviction for possession of a controlled substance, methamphetamine. She argues ineffective assistance of her trial counsel, who failed to seek suppression of drug test results. Because Presler cannot show that the trial court likely would have suppressed the evidence, we affirm her conviction.

FACTS

Rebecca Presler, while six months pregnant, lived with her boyfriend Mikah Richins and her two young children. An acquaintance saw Presler and Richins using methamphetamine, grew concerned for the children's welfare, and reported Presler and Richins to Department of Social and Health Services Child Protective Services (CPS). CPS investigated, placed the children with Presler's mother, and required Presler to receive treatment for controlled substance abuse. CPS later discovered that Rebecca

Presler disregarded her substance abuse treatment, and CPS reported Presler to the City of Poulsbo Police Department. Police obtained a warrant to search Presler's home.

Poulsbo Police Officer John Halsted and other law enforcement officers executed the warrant and searched Rebecca Presler's residence. A CPS case manager accompanied the officers. Presler and Mikah Richins occupied the home during the search. Police located methamphetamine and drug paraphernalia in the common areas of the home. Presler admitted to police she had touched the paraphernalia months earlier, but she denied ownership of the drugs.

Later on the day of the residence search, Rebecca Presler visited the hospital for a drug test. Presler tested positive for methamphetamine. Nicole Reed of CPS reported the result of this drug test to Officer John Halsted, who, in turn, notified a prosecuting attorney.

## PROCEDURE

The State of Washington charged Rebecca Presler with one count of possession of a controlled substance. The State also charged Mikah Richins, but Richins pled guilty before Presler's trial.

The trial court judge who presided over Rebecca Presler's criminal trial also knew of the ongoing dependency action for Presler's children. The trial judge knew that the dependency action required Presler to submit to urinary analysis. The parties disputed whether urinalyses results could be submitted as evidence at trial.

2

In the meantime, the dependency juvenile court barred CPS from further communicating the urinalyses results to the Kitsap County Prosecutor's Office. The juvenile court noted that, in dependency cases, RCW 13.50.100 authorizes the release of confidential information in limited circumstances. The juvenile court ruled, nonetheless, that the statute did not authorize CPS to release Presler's urinalyses results to the prosecutor's office, and the court enjoined further release.

During pretrial motions, the trial court observed that the State had not sought to introduce evidence of urinalysis results from Rebecca Presler's drug tests taken after the State of Washington filed criminal charges against her. In response, the State mentioned that the urinalyses results from the test conducted the day of the residence search might be relevant. The trial court reserved any ruling on the admissibility of the one drug test until the State sought to introduce the results as evidence. Defense counsel neither objected nor moved to suppress the hospital drug test.

During trial, Rebecca Presler several times registered unhappiness with her defense counsel. Presler stated that her preferred defense involved testifying herself that Mikah Richins was sole owner of the drugs or calling Richins to testify that he was the sole owner of the drugs.

The trial court informed Rebecca Presler of her right to testify, her right to call Richins as a witness, and the potential consequences of each. The court warned Presler that she could be found guilty even if Richins admitted possession. The court wished

3

Presler to understand that, while testimony of Richins' ownership and possession was relevant, testifying herself or Mikah Richins' testifying would allow the State to impeach or rebut the testimony. The impeachment could include the results of the drug test conducted on the day of the home search. Defense counsel also cautioned Presler of this danger. Ultimately, Presler chose not to testify or call Mikah Richins.

During closing arguments, a member of the gallery interjected that Mikah Richins had already "pled guilty to all these charges." Report of Proceedings (RP) at 244. The court instructed the jury to disregard the statement. The jury found Rebecca Presler guilty as charged of possession of a controlled substance, specifically methamphetamine.

## LAW AND ANALYSIS

Rebecca Presler contends that she did not receive effective assistance of counsel because her trial counsel failed to move to suppress the hospital drug test that DSHS communicated to law enforcement. Presler reasons that, if the trial court denied the motion, the trial would have proceeded as it did. But, if the trial court granted the motion, she could have challenged the State's claim against her of constructive possession. If the trial court granted the motion to suppress, she could have testified to Mikah Richins' sole possession of the methamphetamine and drug paraphernalia or called Richins to testify to his sole possession without fear of the State impeaching the testimony with evidence of her prior drug use.

4

Rebecca Presler raises this argument for the first time on appeal, which RAP 2.5(a) would generally bar as unpreserved. However, under RAP 2.5(a)(3), a "manifest error affecting a constitutional right" may be addressed for the first time on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). A claim of ineffective assistance of counsel can implicate a manifest error affecting a constitutional right.

Rebecca Presler argues her defense counsel was deficient when he failed to move to suppress the hospital drug test. The Sixth Amendment to the United States Constitution guarantees the right to legal counsel in criminal trials. The Washington Constitution also grants an accused, in a criminal prosecution, the right to appear by counsel. CONST. art. I, § 22. Washington courts have not extended the protections of the state constitution beyond the protections afforded by the United States Constitution. Instead, state decisions follow the teachings and rules announced in the United States Supreme Court's seminal decision of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). An accused is entitled to more than a lawyer who sits next to him in court proceedings. In order to effectuate the purpose behind the constitutional protection, the accused is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. at 686.

Under *Strickland*, courts apply a two prong test: whether (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Strickland*, 466 U.S. at 690-92. To prevail on her claim, a

5

defendant must satisfy both prongs of the ineffective assistance of counsel test. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). If one prong of the test fails, we need not address the remaining prong. *Hendrickson*, 129 Wn.2d at 78.

To prevail on an ineffective assistance of counsel claim, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d at 334-35 (1995). Such a standard echoes the standard of care applied in a civil legal malpractice suit. *Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992). A claim that trial counsel was ineffective does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *State v. Grier*, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011); *Hendrickson*, 129 Wn.2d at 77-78.

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel was effective. *Strickland*, 466 U.S. at 689; *McFarland*, 127 Wn.2d at 335; *Grier*, 171 Wn.2d at 33. To rebut this presumption, a defendant must demonstrate trial counsel's conduct could not be characterized as a legitimate trial strategy or tactic. *Grier*, 171 Wn.2d at 33; *Hendrickson*, 129 Wn.2d at 77-78. The relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

6

To satisfy the prejudice prong, the defendant must establish that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). In assessing prejudice, a court should presume, absent a challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to the law. *Strickland*, 466 U.S. at 694-95.

We decline to address whether Rebecca Presler's trial counsel violated the standard of care, because we can decide the appeal based on the failure to show prejudice. In order to establish actual prejudice, Presler must show that the trial court likely would have granted a motion to suppress the drug test results. *State v. Hamilton*, 179 Wn. App. 870, 882, 320 P.3d 142 (2014). Rebecca Presler argues the trial court would have granted a motion to suppress because no authority of law justified the disclosure of Presler's private health information by CPS to law enforcement. We conclude otherwise.

Article I, section 7 of the Washington State Constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Washington recognizes a privacy interest in health care information. RCW 70.02.005(1).

Washington further recognizes a common law cause of action for invasion of privacy. *Fisher v. Dep't of Health*, 125 Wn. App. 869, 878-79, 106 P.3d 836 (2005).

Rebecca Presler ruminates three possible arguments that the State might forward to justify CPS' reporting the methamphetamine use to law enforcement. Presler then contends that none of the three arguments suffice. Presler fails to recognize a fourth ground, RCW 26.44.040, that could justify DSHS' report to law enforcement.

The State of Washington highlights RCW 26.44.030, which casts DSHS employees as mandatory reporters to law enforcement. RCW 26.44.030 provides:

> When any practitioner, . . . social service counselor, . . . or . . . employee of the department . . . has reasonable cause to believe that a child has suffered abuse or neglect, he or she *shall* report such incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040.

RCW 26.44.030(1)(a) (emphasis added). "Social service counselor" means anyone engaged in a professional capacity . . . promoting the health, welfare, support, or education of children, or providing social services to adults or families, . . . as an employee or agent of any public . . . organization or institution." RCW 26.44.020(24). Under RCW 26.44.020(16), "Negligent treatment or maltreatment" is defined to include "conduct prohibited under RCW 9A.42.100," which in turn criminalizes "knowingly or intentionally permit[ting] a dependent child . . . to be exposed to, ingest, inhale, or have contact with methamphetamine." "When considering whether a clear and present danger exists [to a child's health, welfare, or safety], evidence of a parent's substance abuse as a

8

contributing factor to negligent treatment or maltreatment shall be given great weight."
RCW 26.44.020(16).

RCW 26.44.030 required CPS to report the drug test result to law enforcement. This mandatory reporting trumps psychologist-client privilege. *State v. Ackerman*, 90 Wn. App. 477, 486, 953 P.2d 816 (1998). Rebecca Presler does not argue an exception to the mandatory reporting statute applies. As RCW 26.44.030 mandates the communication Presler now challenges, from CPS to law enforcement, the trial court would likely not have granted a motion to suppress.

Rebecca Presler fails to meet her burden of showing ineffective assistance.

## CONCLUSION

We deny Rebecca Presler's claim of ineffective assistance of counsel. We affirm her conviction of possession of a controlled substance.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____          _____
Siddoway, C.J.                              Korsmo, J.

9