# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DEXMOND EMESON, | No. 46157-9-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF CORRECTIONS, | PUBLISHED OPINION |
| Respondent. | |

LEE, J. — Dezmond Emeson, a former employee of the Department of Corrections (DOC); appeals the superior court's dismissal of his case on summary judgment. Prior to filing this suit, Emeson filed a suit in federal court, which alleged that DOC failed to reasonably accommodate his disability,[1] created a hostile work environment, exercised disparate treatment towards him, retaliated against him, and wrongfully terminated him in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981. In the federal case, DOC moved for summary judgment, and Emeson moved for dismissal. Pursuant to Western District of Washington Rule of Civil Procedure 7(b)(2), the federal court granted summary judgment to DOC and dismissed Emeson's claims with prejudice.

---

[1] The actual disability Emeson claims he suffers is not entirely clear. In his federal and state court complaints, Emeson only states he "is disabled with a mental impairment." Clerk's Papers (CP) at 983, 989. The record shows that Emeson has "alluded" to various people "that he was the victim of a gun shot [sic] wound to the head (in 1987)." CP at 185.

In this case, Emeson also alleged DOC failed to reasonably accommodate his disability, created a hostile work environment, exercised disparate treatment towards him, retaliated against him, and wrongfully terminated him in violation of chapter 49.60 RCW and state common law. In addition, Emeson claimed that DOC is liable for invasion of privacy for the statements contained in a Facebook post made by a DOC employee referencing Emeson having a disability. His state law claims were premised on the same events that precipitated his federal suit. The superior court granted summary judgment to DOC on all of Emeson's claims, finding res judicata precluded Emeson's claims that DOC created a hostile work environment, exercised disparate treatment towards him, retaliated against him, and wrongfully terminated him. The superior court also found that Emeson had not presented a prima facie case for his reasonable accommodation claim. And, finally, the superior court found that Emeson's invasion of privacy claim was brought after the statute of limitations had expired and was not imputable to DOC.

On appeal, Emeson contends the superior court erred dismissing his claims on res judicata grounds because (1) the state law claims were not brought in the federal action and DOC did not show that the claims "'could have been brought'" in the federal action; (2) applying res judicata to bar his claims "offend[s] the public policies of RCW 49.60 *et*[] *seq.*"; and (3) DOC did not establish the elements of res judicata were present. Br. of Appellant at 41. Emeson also contends the superior court erred in dismissing his invasion of privacy claim because the wrong statute of limitations was applied and the Facebook post should be considered within the scope of employment.

We hold that the doctrine of res judicata precludes Emeson's claims against DOC for failure to reasonably accommodate, hostile work environment, disparate treatment, retaliation, and wrongful termination. We further hold that DOC is not liable for invasion of privacy because the employee's Facebook post was not made within the scope of her employment with DOC. Accordingly, we affirm the superior court's summary judgment dismissal of Emeson's claims against DOC.

FACTS

A.    BACKGROUND FACTS[2]

Dezmond Emeson worked as a community corrections officer for DOC. After several disagreements and confrontations with other DOC personnel regarding Emeson's job performance, Emeson was placed on administrative leave on July 10, 2009, and DOC's Regional Human Resources consultant requested a "fitness for duty" evaluation. CP at 185. Dr. Bill Ekemo, who conducted the evaluation, opined that Emeson was not able to "perform some of the essential functions of his job at expected standards." CP at 193.

After Dr. Ekemo's evaluation, DOC elected to try to find a reasonable accommodation instead of seeking a disability separation. Emeson later accepted a position as an "Office Assistant 3" as a reasonable accommodation. Emeson began his new job as an office assistant on April 26, 2010.

---

[2] This appeal follows a summary judgment dismissal of Emeson's claims by the superior court. Accordingly, the facts recited herein are presented in the light most favorable to the non-moving party, Emeson. *Osborn v. Mason County.*, 157 Wn.2d 18, 22, 134 P.3d 197 (2006).

On May 13, 2010, Sandy Phelps, Emeson's direct supervisor, posted the following on her Facebook page: "Haven't heard anything about the RIF. Just dealing with the one person we all know, and a CCO who is working the reception due to a reasonable accommodation from Parkland. :0." CP at 733. On May 18, the Secretary of DOC became aware of the Facebook post. On May 24, Emeson and his union representative submitted an "Official Grievance Form" to DOC. CP at 931. The Official Grievance cited Phelps's Facebook post from May 13th and another conflict arising in a meeting with superiors on the day the grievance was filed. DOC sent Phelps a letter the following day reprimanding her for the Facebook post, reminding her of the ethical standards she agreed to abide by, and suggesting further training opportunities for her to improve as a supervisor.

Over the course of the following seven months, Emeson had a contentious relationship with Phelps and several other supervisors and managers. On January 29, 2011, Emeson was notified that he was being separated from his position with DOC for inappropriate and/or unprofessional behavior.

B.    FEDERAL LAWSUIT

On July 1, 2011 Emeson filed a complaint in the federal District Court for the Western District of Washington. CP at 1000. In his federal complaint, Emeson alleged DOC and DOC supervisors or managers violated Title VII of the Civil Rights Act and 42 U.S.C. § 1981. Emeson alleged the federal violations occurred when DOC "failed to take reasonably adequate action to correct pervasive and severe harassment based on race, national origin, and disability, hostile environment, and physically harmful and disparate treatment of an African-American employee

4

of Nigerian decent who was terminated in retaliation for engaging in protected activity." CP at 980 (plaintiff's complaint for damages in federal court).

On June 12, 2012, DOC moved for summary judgment dismissal on all claims.[3] On June 21, Emeson moved to voluntarily dismiss his case without prejudice under Fed. R. Civ. P. 41. Emeson did not respond to DOC's motion for summary judgment. The federal court ruled that Emeson had not carried his burden on summary judgment to show that there were issues of material fact. The federal court also ruled that "Emeson's failure to file a meaningful response is" "'considered by the court as an admission that the motion has merit.'" CP at 1003 (citing Western District of Washington Rule of Civil Procedure 7(b)(2)). Consequently, the federal court denied Emeson's motion for voluntary dismissal to the extent it sought a dismissal without prejudice and granted DOC's motion for summary judgment, dismissing Emeson's case with prejudice. Emeson did not appeal the federal court's order dismissing his case with prejudice.

C.    STATE LAWSUIT

On February 8, 2013, Emeson filed a complaint for damages against DOC in Pierce County Superior Court. Emeson then filed an amended complaint alleging DOC "failed to reasonably accommodate Plaintiff's disabilities, created and perpetuated a hostile environment and engaged in disparate treatment based on plaintiff's race/national origin and disability," and "wrongfully terminated Plaintiff." CP at 994 (Plaintiff's Amended Complaint for Damages in state court). Emeson sought relief for "Invasion of Privacy"; "Failure to Provide Reasonable Accommodation (RCW 49.60 *et seq.*)"; "Hostile Work Environment and Disparate Treatment Based on Disabilities,

---

[3] The parties had already engaged in discovery, and the trial was set to begin in two months.

Race, National Origin (RCW 49.60 *et*[] *seq.*)"; "Unlawful Retaliation based on complaints of discrimination based on race, national origin and disability (RCW 49.60 *et*[] *seq.*)"*,* and "Actual Discharge." CP at 996-98 (boldface omitted).

DOC filed a summary judgment motion to dismiss all of Emeson's state law claims. The superior court ruled Emeson's hostile work environment, disparate treatment, retaliation, and wrongful termination claims were precluded under the doctrine of res judicata based on the federal court's prior dismissal of Emeson's claims. The superior court also ruled Emeson had failed to present a prima facie case establishing his reasonable accommodation claim. Finally, the superior court ruled against Emeson on his invasion of privacy claim on the grounds that it was brought after the statute of limitations had expired and the conduct was not imputable to DOC. Consequently, the superior court granted summary judgment, dismissing all of Emeson's claims. Emeson appeals.

## ANALYSIS

A.    STANDARD OF REVIEW

We review a superior court's grant of summary judgment de novo, engaging in the same inquiry as the superior court. *Osborn v. Mason County*, 157 Wn.2d 18, 22, 134 P.3d 197 (2006). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). We view the facts in the light most favorable to Emeson as the non-moving party and affirm summary judgment against him only if, based on all of the evidence, reasonable people could not reach a different conclusion. *Marincovich*, 114 Wn.2d at 274.

B.      RES JUDICATA

The superior court summarily dismissed Emeson's hostile work environment, disparate treatment, retaliation, and wrongful termination claims under the doctrine of res judicata. We agree and also hold that Emeson's claims alleging a failure to reasonably accommodate is precluded under the doctrine of res judicata.[4]

Whether res judicata bars an action is a question of law we review de novo. *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009), *review denied*, 168 Wn.2d 1028 (2010). Res judicata is a doctrine of claim preclusion that bars relitigation of a claim that has been determined by a final judgment. *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 40-41, 330 P.3d 159 (2014). Filing two separate lawsuits based on the same event is precluded under Washington law. *Ensley* 152 Wn. App. at 898-99. "Res judicata applies to matters that were actually litigated and those that 'could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding.'" *DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 891-92, 1 P.3d 587 (2000) (quoting *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 328-29, 941 P.2d 1108 (1997)), *review denied*, 146 Wn.2d 1016 (2002). Res judicata is intended to prevent piecemeal litigation and to ensure the finality of judgments. *Spokane Research & Defense Fund v. City of Spokane,* 155 Wn.2d 89, 99, 117 P.3d 1117 (2005). The doctrine of res judicata promotes judicial economy, efficiency, and fairness to litigants. *Storti*, 181 Wn. 2d at 40.

---

[4] The superior court dismissed Emeson's failure to reasonably accommodate claim on the ground that Emeson did not establish a prima facie claim. Because we review this claim de novo, and we can affirm or reverse on any grounds, we consider the preclusive effect of res judicata on Emeson's reasonable accommodation claim. *Hoover v. Warner*, 189 Wn. App. 509, 526, 358 P.3d 1174 (2015), *review denied*, 185 Wn.2d 1004 (2016).

The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit. *Hisle v. Todd Pac. Shipyards Corp.,* 151 Wn.2d 853, 865, 93 P.3d 108 (2004). A grant of summary judgment at a prior proceeding is considered a final judgment on the merits. *DeYoung*, 100 Wn. App. at 892.

Our Supreme Court has enumerated four requirements for res judicata to apply. *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d 818 (2011). Res judicata applies and bars the subsequent action where there is a concurrence of identity in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of the persons for or against whom the claim is made. *Williams*, 171 Wn. 2d at 730; *DeYoung*, 100 Wn. App. at 891.

1.      Final Judgment on the Merits in a Prior Suit

Here, the threshold requirement that there be a final judgment on the merits in a prior suit is met. The federal court considered Emeson's failure to respond to summary judgment as an admission that the motion had merit and granted summary judgment in favor of DOC, dismissing Emeson's case with prejudice. Therefore, there is a final judgment on the merits and the inquiry advances to whether the four enumerated requirements to finding res judicata are met.

2.      Identity in Subject Matter

The first requirement—whether the two actions involve the same subject matter—is met. The federal action sought damages from DOC because it allegedly "failed to take reasonably adequate action to correct the pervasive and severe harassment based on race, national origin, and disability, hostile environment, and physically harmful and disparate treatment of an African-American employee of Nigerian decent who was terminated in retaliation for engaging in protected activity." CP at 980 (Plaintiff's Complaint for Damages in federal court). The state action sought

damages from DOC because DOC allegedly "failed to reasonably accommodate Plaintiff's disabilities, created and perpetuated a hostile environment and engaged in disparate treatment based on plaintiff's race/national origin and disability," and "wrongfully terminated Plaintiff" "based on baseless claims, based on his race, national origin, disability and in retaliation for his many complaints." CP at 994, 996 (Plaintiff's Amended Complaint for Damages in state court). Thus, both actions involve alleged improper action, in an employment setting, by DOC against Emeson based on Emeson's race, national origin, and disability. The subject matter of both claims is identical and the first requirement for application of res judicata is met.

3. Identity in the Causes of Action

The second requirement—whether there is an identity in the causes of action presented in the federal case and in the state case—is also met. Emeson argues there is no identity in causes of action because his suit in federal court was brought under Title VII and 42 U.S.C. § 1981, whereas his state suit alleges violations of chapter 49.60 RCW and state common law. In support, Emeson argues that "under Washington's version of the 'substantial factor' test applied to discrimination, retaliation and hostile work environment claims and [sic] employee can still prevail even if otherwise legitimate justifications existed for the employer's actions," but that the same is not true under federal law. Br. of Appellant at 54. While it is true that Washington requires the protected trait to be a "substantial" motivating factor in an employment action, Emeson misunderstands the relationship that the qualifier "substantial" has to the federal law.

Washington courts use a four-factor test for determining whether there is an identity in the causes of action. *DeYoung*, 100 Wn. App. at 892.

9

"(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

*Id.* (quoting *Kuhlman v. Thomas*, 78 Wn. App. 115, 122, 897 P.2d 365 (1995)); *see also Pederson v. Potter*, 103 Wn. App. 62, 72, 11 P.3d 833 (2000) (stating the same), *review denied*, 143 Wn.2d 1006 (2001). We address each factor in turn.

   a. Factor 1—Whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action

The rights and interests established by the federal judgment would be impaired by the state court suit if it were allowed to proceed. Specifically, the judgment in the federal case determined that DOC's summary judgment motion had merit and that Emeson's claims therefore "should be dismissed with prejudice." CP at 1003.

Emeson's claims in the federal court suit included "harassment based on race, national origin, and disability, hostile environment, . . . physically harmful and disparate treatment of an African-American employee of Nigerian decent," and "terminat[ion] in retaliation for engaging in protected activity." CP at 980 (quoting Plaintiff's Complaint for Damages in federal court). Emeson's federal court suit also asserted violations of Title VII of the Civil Rights Act, for which 42 U.S.C. § 1981(a) provides recovery where employers fail to demonstrate a good faith effort to reasonably accommodate a so-entitled employee." 42 U.S.C. § 1981a(a)(2)-(3). Dismissing these claims with prejudice precludes liability against DOC for those claims. Clearly, any judgment on Emeson's state law claims would subject DOC to liability for the same types of claims based on the same facts from which the federal court dismissed. *Kuhlman*, 78 Wn. App. at 123.

  b. Factor 2—Whether substantially the same evidence is presented in the
     two actions

The second factor is met because "substantially the same evidence is presented in the two

actions." *Kuhlman*, 78 Wn. App. at 122. The same core facts are alleged in both claims, and no

new facts are alleged in the state court action that were not alleged in the federal court action. In

fact, all 10 of the factual allegations contained in Emeson's amended complaint filed in state court

are verbatim, or near verbatim, duplicates of facts he alleged in his complaint filed in federal court.[5]

  c. Factor 3—Whether the two suits involve infringement of the same right

The third factor requires us to address whether the two suits involve infringement of the

same right. Both suits allege Emeson's right to a reasonable accommodation and to be free from

a hostile work environment, disparate treatment in the work place, retaliation, and wrongful

termination. However, Emeson argues that this factor cannot be met because the federal claims

require a higher burden of proof than the state law claims. We disagree.

Title VII is a "federal counterpart" to chapter 49.60 RCW. *Kumar v. Gate Gourmet, Inc.*,

180 Wn.2d 481, 489 n.4, 490, 325 P.3d 193 (2014) (quoting *Hiatt v. Walker Chevrolet Co.*, 120

Wn.2d 57, 61-62, 837 P.2d 618 (1992)). The 1991 Amendment to Title VII "provides that 'an

unlawful employment practice is established' when a protected characteristic is 'a motivating

factor' in an employment action." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 847 (9th Cir. 2002),

*aff'd*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting 42 U.S.C. § 2000e-2(m)).

---

[5] Specifically, paragraphs 4.1-4.10 of the state court amended complaint mirror verbatim, or nearly verbatim, the following paragraphs of the federal court complaint, respectively: 4.1, 4.2, 4.7, 4.10, 4.5, 4.9, 4.13, 4.15, 4.16, and 4.17. *Cf.* CP at 995-96 (paragraphs 4.1-4.10 of Emeson's amended complaint), *with* CP at 981-84 (paragraphs 4.1-4.18 of Emeson's federal complaint).

Thus, a plaintiff in a federal action can prevail by showing that the discrimination was "a motivating factor" in the employment decision even though other factors also motivated the employment decision. *Costa*, 299 F.3d at 848.

Title VII states:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of* such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a) (emphasis added). And, the statute continues:

Impermissible consideration of race, color, religion, sex, or national origin in employment practices

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, even though other factors also motivated the practice.

42 U.S.C. § 2000-2(m) (emphasis added).

As the Ninth Circuit in *Costa* recognized, a plaintiff in a Title VII discrimination case may have evidence of a single motivating factor for the employer's decision or may have evidence of multiple motivating factors ("mixed motives") for the employer's decision. 299 F.3d at 856-57. Regardless of whether there is a single motivating factor or mixed motives, the plaintiff's burden

of proof remains the same: "to show by a preponderance of the evidence that the challenged employment decision was '*because of*' discrimination." *Costa*, 299 F.3d at 857 (emphasis added).[6]

Under Washington law, it is an unfair practice for any employer:

(2) To discharge or bar any person from employment *because of* . . . race, creed, color, national origin, . . . or the presence of any sensory, mental, or physical disability . . . .

(3) To discriminate against any person in compensation or in other terms or conditions of employment *because of* . . . race, creed, color, national origin, . . . or the presence of any sensory, mental, or physical disability. . . .

RCW 49.60.180 (emphasis added).

Thus, both the federal and state claims require a showing that the challenged employment decision be "because of" discrimination. Our Supreme Court has further elaborated on that standard and has held that in cases involving discrimination claims brought pursuant to RCW 46.60.180, a plaintiff needs to show "that a reasonable jury could find that the plaintiff's protected trait *was a substantial factor motivating* the employer's adverse actions" to survive summary judgment. *Scrivener v. Clark College*, 181 Wn.2d 439, 445, 334 P.3d 541 (2014) (emphasis added); *see also Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 310, 898 P.2d 284 (1995) (holding the same). The court went on to explain that "substantial factor" means "that the protected characteristic was a significant motivating factor bringing about the employer's decision.

---

[6] All of Emeson's federal claims can be analyzed together because the burdens of proof and persuasion are the same. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir.) (applying Title VII analysis to an ADA claim), *cert. denied*, 534 U.S. 888 (2001); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1264 (9th Cir. 1997) (applying Title VII's analysis to a § 1981 claim).

It does not mean that the protected characteristic was the sole factor in the decision." *Scrivener*, 181 Wn.2d at 444 (citations omitted).

Thus, a plaintiff under Washington law satisfies his burden of proof when he shows discrimination was a "substantial factor motivating the employer's actions." *Scrivener*, 181 Wn.2d at 445. But the federal counterpart does not include the qualifier that the motivating factor needs to be "substantial." *Cf. Scrivener*, 181 Wn.2d at 445, *with* 42 U.S.C. § 2000e-2(m). The federal law merely requires the plaintiff to show discrimination was a "motivating factor for any employment practice." 42 U.S.C. § 2000e-2(m); *see also Costa*, 539 U.S. at 94 (affirming *Costa*, 299 F.3d 838). Therefore, contrary to his assertion, Emeson's burden of production at the summary judgment stage in his federal court action is *lower* than his burden of production in his state court action. Thus, Emeson's contention that the federal court suit and the state court suit do not involve infringement of the same right because the federal court claims require a higher burden of proof than the state court claims fails.

At oral argument, Emeson also argued that a plaintiff in a federal claim must show "but for" discrimination and cited to the Ninth Circuit Model Civil Jury Instruction 10.3 in support. Neither the model rule nor case law supports his argument.

The Ninth Circuit Model Civil Jury Instruction 10.3 is titled, "Civil Rights—Title VII—Retaliation—Elements and Burden of Proof" and states:

> The plaintiff seeks damages against the defendant for retaliation. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:
>
> 1. the plaintiff engaged in or was engaging in an activity protected under federal law, that is [activity];

2. the employer subjected the plaintiff to an adverse employment action, that is [adverse employment action]; and

[3. the plaintiff was subjected to the adverse employment action *because of* [his] [her] [participation in protected activity.]
. . . .
or
[3. the protected activity was a motivating factor in the adverse employment action.
. . .]

NINTH CIRCUIT JURY INSTRUCTIONS COMM. MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT 10.3 (2007) (emphasis added) (alterations in original).

The comments to the Ninth Circuit Model Civil Jury Instruction 10.3 note that for the third element (the "because of" element), the trial court "may provide either a 'single motive' or 'mixed motive' instruction" to the jury. The comments go on to say that with respect to "mixed motive" cases, an employer may escape liability for certain types of relief (e.g., orders of reinstatement, hiring, promotion, etc.) by proving the absence of "but for" causation as an affirmative defense. *See Costa*, 539 U.S. at 91 (holding that the employer can avail itself of a limited affirmative defense that restricts the available remedies if it demonstrates that it would have taken the same action absent the impermissible but for causation.); *Costa*, 299 F.3d at 850 ("[A]n employer can escape damages and orders of reinstatement, hiring, promotion, and the like—but not attorney's fees or declaratory or injunctive relief—by proving the absence of 'but for' causation as an affirmative defense."). Therefore, the "but for" requirement Emeson suggested to this court at oral argument is not a burden placed on a plaintiff in a Title VII case in federal court. Rather, the "but for" requirement must be shown by an employer asserting an affirmative defense in a mixed motive case in an attempt to limit damages. Consequently, Emeson's argument fails.

Ultimately, Emeson is incorrect in arguing that there is not an identity in the causes of action because claims under federal law require a higher burden of proof. Federal law explicitly allows a plaintiff to establish liability by showing that the employer's discriminatory motive was "a motivating factor" for the adverse employment decision; whereas, Washington law requires a showing that the discriminatory motive was "a substantial factor motivating the employer's actions." *Compare* 42 U.S.C. § 2000e-2(m) with *Scrivener*, 181 Wn.2d at 445. Both of Emeson's suits alleged Emeson's right to a reasonable accommodation and to be free from a hostile work environment, disparate treatment in the work place, retaliation, and wrongful termination. The two suits involve infringement of the same right and the third factor is satisfied. *Kuhlman*, 78 Wn. App. at 122.

          d.   Factor 4—Whether the two suits arise out of the same transactional nucleus of facts

The fourth factor is met because both suits arise out of the same nucleus of operative facts. *Id*. Both his federal and state suits are predicated on Emeson's allegations of a failure to reasonably accommodate, hostile work environment, disparate treatment, retaliation, and wrongful termination based on his race, national origin, and disability. *Id*. Furthermore, no new facts were alleged in Emeson's complaint filed in state court. Because all four factors of the second element are met, the second element requiring an identity in the causes of action is met.[7]

---

[7] Emeson also asserts that "it is highly speculative and dubious that any claims pursuant to RCW 49.60 necessarily 'could have' been pursued in the above-referenced dismissed district court action." Br. of Appellant at 52-53. We disagree.

Federal courts have supplemental jurisdiction over state claims sharing "'a common nucleus of operative fact'" with federal claims. *Bale v. Gen. Tel. Co. of Cal.*, 795 F.2d 775, 778 (9th Cir. 1986) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L.

4.    Identity of Persons and Parties, and Identity in Quality of Persons

The third and fourth requirements for res judicata to apply—(3) identity in persons and parties, and (4) identity in the quality of the persons for or against whom the claim is made—are also met. "Under the principles of res judicata, a judgment is binding upon parties to the litigation and persons in privity with those parties." *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 764, 887 P.2d 898 (1995). Privity is established "where a person is in actual control of the litigation, or substantially participates in it." *Loveridge*, 125 Wn.2d at 764. "[I]n general, the employer/employee relationship is sufficient to establish privity." *Kuhlman*, 78 Wn. App. at 121.

Here, Emeson and DOC were both in actual control of their interests during the prior federal court litigation, just as they were both in actual control of their interests in the subsequent state court litigation. In the federal court action, Emeson named himself as the plaintiff and named DOC[8] as the defendant. In the subsequent state court action, Emeson again named himself as the plaintiff, and named DOC as the defendant. The federal court complaint was defended entirely by DOC, and it was pursuant to DOC's motion that summary judgment dismissal was granted in the

---

Ed. 2d 218 (1966)); 28 U.S.C. § 1367(a); *see also Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1088 n.4 (9th Cir. 2000) (finding supplemental jurisdiction proper where state claims are based on the same factual allegations as federal claims). Because Emeson's federal claims and state claims are based on the same nucleus of operative facts, the federal court could have exercised supplemental jurisdiction over Emeson's state law claims. *See e.g.*, *Munger*, 227 F.3d at 1088 n.4. And, because res judicata "prohibits the relitigation of claims and issues that were litigated, or *could have been* litigated, in a prior action," Emeson's assertion that the discretionary nature of federal supplemental jurisdiction prohibits the application of res judicata fails. *Pederson*, 103 Wn. App. at 67 (emphasis added).

[8] Emeson also named up to 10 "supervisors or other management employees at [DOC] whose identities are as yet unknown." as defendants. CP at 101. But the "yet unknown" supervisors or managers were never identified.

federal court action. Because the plaintiff and defendant in the federal court case are identical to those in this state court action, the third and fourth requirements are met. *See e.g.*, *DeYoung*, 100 Wn. App. at 893 ("Finally, the third and fourth factors—identity of the parties and persons against whom the claims are made—are satisfied because the parties and persons in this appeal are identical."); *Pederson*, 103 Wn. App. at 73 ("Because the parties are identical, the quality of the persons is also identical.").

          5.      Res Judicata Applies

The federal court entered a final judgment on the merits when it entered summary judgment against Emeson and the four requirements for res judicata to apply are met. First, the subject matter in both actions is identical. Second, there is an identity in the causes of action in both the federal suit and the state suit. Third, both suits involve the same persons or parties. And fourth, both suits involve the same quality of persons. Therefore, we hold Emeson's claims alleging a failure to reasonably accommodate, hostile work environment, disparate treatment, retaliation, and wrongful termination are precluded under the doctrine of res judicata.[9]

C.    INVASION OF PRIVACY

The superior court granted summary judgment to DOC with respect to Emeson's invasion of privacy claim for Phelps's Facebook post on the grounds that it was not brought within the

---

[9] The superior court made no explicit findings based on the doctrine of collateral estoppel for the hostile work environment, disparate treatment, and wrongful termination claims, but both parties argued the doctrine's application at the summary judgment hearing and in their appellate briefs. Because we hold that Emeson's reasonable accommodation, hostile work environment, disparate treatment, retaliation, and wrongful termination claims are precluded under the doctrine of res judicata, we do not reach the question of whether these claims are precluded under collateral estoppel.

statute of limitations and that the Facebook post could not be imputed to DOC.[10] Although we hold that Emeson's invasion of privacy claim was not barred by the statute of limitations, we affirm the superior court's finding that the Facebook post cannot be imputed to DOC because the DOC employee who posted the information was not acting within the scope of her employment.

Washington recognizes the common law tort of invasion of privacy. *Fisher v. State ex rel. Dep't of Health*, 125 Wn. App, 869, 878, 106 P.3d 836 (2005). Emeson argues "what is at issue is an improper disclosure of private medical facts." Br. of Appellant at 78. He contends that "through Facebook, Supervisor Phelps gave publicity to a matter concerning the private life of Appellant; [t]hat the matter publicized would be highly offensive to a reasonable person; and, [t]hat the matter publicized was not of legitimate public concern." Br. of Appellant at 80. Based on these assertions, it appears Emeson is arguing that the tort of invasion of privacy by publication applies.

The Restatement (Second) of Torts § 652D (1977) provides the general rule for invasion of privacy by publication. *Reid v. Pierce County*, 136 Wn.2d 195, 205, 961 P.2d 333 (1998); *Fisher*, 125 Wn. App. at 879. It states:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> > (a) would be highly offensive to a reasonable person, and
> >
> > (b) is not of legitimate concern to the public.

---

[10] This claim is not precluded under res judicata despite Emeson's citation to it in his federal and state complaints. Res judicata does not apply because the federal complaint only sought relief under Title VII and 42 U.S.C. § 1981, and neither federal statute provides relief for the tort of invasion of privacy.

RESTATEMENT (SECOND) OF TORTS § 652D. As used in this section, publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." RESTATEMENT (SECOND) OF TORTS § 652D cmt. a.

      1.      Statute of Limitations

Emeson argues that the three-year statute of limitations under RCW 4.16.080 should apply to his invasion of privacy claim. DOC argues the two-year statute of limitations applies for two reasons: first, because "[i]nvasion of privacy by intrusion is an intentional act" and "[i]ntentional torts are subject to a two[-] year statute of limitations" under RCW 4.16.100; and second, "invasion of privacy claims are subject to a two[-]year statute of limitations" under *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 722 P.2d 1295 (1986). Br. of Resp't at 38. We disagree with DOC and apply the three-year statute of limitations.

As noted, Emeson asserts an invasion of privacy by publication claim, not an invasion of privacy by intrusion. The tort invasion of privacy by publication does not include intent as an essential element. *See Fisher*, 125 Wn. App. at 879-80 (holding intent as an essential element to an invasion of privacy by intrusion and not listing intent as a required element of invasion of privacy by publication). Thus, invasion of privacy by publication is not an intentional tort.

RCW 4.16.100 requires actions for "libel, slander, assault, assault and battery, or false imprisonment," along with actions "upon a statute for forfeiture or penalty to the state," to be brought within two years. In *Eastwood*, the court considered whether a false light invasion of privacy claim was subject to the two-year or three-year statute of limitations. 106 Wn.2d at 469. The court relied on the two-year statute of limitations applicable to defamation claims under RCW

4.16.100 to hold that a two-year statute of limitations applies to a false light invasion of privacy claim. "[B]ecause of the duplication inherent in false light and defamation claims [such as libel and slander] . . . the same statute of limitations is applicable to both actions." *Id.* at 474. Therefore, a false light invasion of privacy claim "is governed by the 2-year statute of limitations for libel and slander, RCW 4.16.100(1)." *Id.*

The *Eastwood* analysis does not apply here because there is no indication in the record or in the briefing that the Facebook post was either false or defamatory. Having been provided no other authority upon which to hold the claim of invasion of privacy by publication should be limited to a two-year statute of limitations, we may assume the parties have found none. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Moreover, a false light claim arises when publicity is given to "a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed." *Eastwood*, 106 Wn.2d at 470-71; RESTATEMENT (SECOND) OF TORTS § 652E (1977). A defamation claim for either libel or slander requires (a) "a false and defamatory statement concerning another"; (b) "an unprivileged publication to a third party"; (c) "fault amounting at least to negligence on the publisher's part"; and (d) "either actionability of the statement or special harm caused by the publication." *Eastwood*, 106 Wn.2d at 470; RESTATEMENT (SECOND) OF TORTS § 558. In contrast, invasion of privacy by publication requires the publicized matter "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate public concern." RESTATEMENT (SECOND) OF TORTS § 652D.

Here, Emeson does not assert the content of Phelps's Facebook post was false or defamatory, and the record does not indicate that the post was false or defamatory. Without a false or defamatory statement, claims for libel, slander, and false light invasion of privacy fail. *Eastwood*, 106 Wn.2d at 470-71; RESTATEMENT (SECOND) OF TORTS § 558. Claims for invasion of privacy by publication can succeed without false or defamatory statements. RESTATEMENT (SECOND) OF TORTS § 652E. Consequently, *Eastwood*'s analysis and holding are inapplicable, and we hold that the three-year statute of limitations applies to the claim of invasion of privacy by publication.

Applying the three-year statute of limitations to Emeson's claim, his claim is not time barred. Phelps made the post on May 13, 2010. Emeson filed an "Official Grievance Form" citing the Facebook post on May 24, 2010. Emeson filed his initial complaint in state court on February 8, 2013, and asserted the invasion of privacy and supporting facts in that complaint. Thus, Emeson's state court claim for invasion of privacy by publication was brought within the three-year statute of limitations.

2.      Imputation on DOC

Emeson's claim fails because there is no question of fact regarding whether Phelps was acting within the scope of her employment with DOC when she made the post. Emeson cites *Robel v. Roundup Corp.*, 148 Wn.2d 35, 53-54, 59 P.3d 611 (2002), to support his argument that Phelps's conduct can be imputed to DOC. We disagree.

The proper inquiry into whether an employee's conduct is outside the scope of employment is whether the employee was fulfilling her job functions at the time she was engaged in the injurious conduct. *Id.* at 53. Here, Emeson does not allege that Phelps was fulfilling any job

functions in posting the comment on Facebook, and the record does not support any such inference. Moreover, the record shows Phelps posted the comment from her personal account at 8:04 P.M. on May 13 on her personal Facebook page. Therefore, we hold that the trial court properly granted summary judgment dismissal of Emeson's invasion of privacy claim because Phelps's Facebook post was made outside the scope of her employment with DOC.

## CONCLUSION

We hold that Emeson's claims against DOC for failure to reasonably accommodate, hostile work environment, disparate treatment, retaliation, and wrongful termination are precluded under the doctrine of res judicata. We further hold that DOC is not liable for invasion of privacy because the employee's Facebook post was not made within the scope of her employment with DOC. Accordingly, we affirm the superior court's summary judgment dismissal of Emeson's claims against DOC.

Lee, J.

We concur:

Worswick, J.

Maxa, A.C.J.