IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 83313-8-I |
| SAY SULIN KEODARA, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

COBURN, J. — Say Sulin Keodara brings this personal restraint petition challenging the Department of Corrections' (DOC) decision to terminate the communication and visitation privileges of his fiancée, Melissa Mesa, after DOC uncovered evidence that Keodara, Mesa, and others were working together to smuggle drugs into a DOC prison facility. DOC contends res judicata bars Keodara's claims because he raised the same claims and they were adjudicated to final judgment in federal court. We agree and deny the petition.

FACTS

Keodara is currently serving a 480-month sentence and is incarcerated at the Clallam Bay Correctional Center (CBCC).

In April 2020, the Intelligence and Investigations Unit (IIU) at CBCC received information that incarcerated individuals, people in the community, and a CBCC employee were working together to "buy, sell, and smuggle drugs into the prison." The

IIU began reviewing recorded communications and identified Keodara and Melissa Mesa as participants in the scheme to introduce drugs into the prison. Mesa, then a United States Customs and Border Patrol Agent, was in a relationship with Keodara, who maintains that Mesa was his fiancée.

In August 2020, a CBCC corrections officer was arrested and admitted involvement in the drug trafficking scheme. Keodara and the other inmates involved in the scheme received infractions for violating rule 603 under WAC 137-25-030(1), conspiring to introduce unauthorized drugs into CBCC. At Keodara's disciplinary hearing in September, DOC alleged that Keodara conspired with other offenders at CBCC, a CBCC employee, and "people in the community" to have illicit drugs introduced into CBCC. The employee report supporting the infraction summarized the evidence and confidential information received by DOC. The employee report identified three individuals in the community but did not specifically identify Mesa. The hearing officer found Keodara guilty of the infraction on October 28. The sanctions imposed included 180 days of suspended visitation and restricted communication privileges with a recommendation, pending superintendent's approval, of the permanent loss of any and all communication with the three named individuals in the community. Keodara did not appeal the disciplinary action.

Because Mesa was a federal agent, IIU reached out to the FBI for assistance with the investigation. The coordination between IIU and outside agencies meant DOC actions were timed so as to not jeopardize the other agencies' investigations.

In a letter dated November 4, the Superintendent of CBCC, Jeri Boe, notified Mesa that her visitation and communication privileges with CBCC were "immediately

and permanently terminated." The letter explained that DOC believed "you, in concert with and at the direction of incarcerated individual, Keodara, assisted, aided, and/or conspired to introduce contraband into CBCC." The letter advised Mesa that she had "the right to appeal the visitation decision to the Assistant Secretary for Prisons, who has the final approval on visiting privilege appeals." The letter also explained "that policy does not provide an option for appeal of the restriction of all communication." Keodara was copied on this letter.

Both Mesa and Keodara sent separate letters of appeal to Assistant Secretary for Prisons Robert Herzog.

In a December 14 letter to Mesa, a copy of which was also sent to Keodara, Herzog explained that "Based on records reviewed, due to safety and security concerns, the termination of visit privileges is appropriate and remains in place at this time."

On December 20, Keodara received a DOC rejection notice informing him that an incoming letter from "M Sihaya Keodara" was rejected because the envelope contained a letter and marriage license application that is signed "Melissa Keodara" and "[c]orrespondence between these two individuals has been permanently restricted." Keodara did not appeal the rejection. In January 2021, Keodara submitted an "offender kite" to Boe asking, "Can Melissa Mesa and I begin our marriage process[?] If not, can you explain why? – She told my mother that her paperwork is ready again." Boe responded "Currently your communication and visits have been terminated with this visitor."

In March 2021, Keodara filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 in the U.S. District Court for the Western District of Washington. Among his claims, Keodara alleged that Boe and Herzog violated his constitutional rights under the First and Fourteenth Amendments when Boe terminated Mesa's visitation and communication privileges in the November 4 letter.[1] Keodara claimed that the action amounted to discipline, that he did not receive adequate due process and that it effectively prevented him from corresponding with and marrying Mesa.[2]

In August 2021, Keodara received notice of a serious infraction for violating rule 718 under WAC 137-25-030(1), "Using the mail, telephone, or electronic communications in violation of any law, court order, or previous written warning, direction, and/or documented disciplinary action." Keodara was found guilty for violating the November 4, 2020 "permanent suspension of all communication memo" given to him and Mesa. Keodara and Mesa had sent each other numerous JPAY[3] messages and photographs. Keodara was sanctioned to 20 days confinement to his cell. He did not appeal the disciplinary action.

In November 2021, Keodara filed this Personal Restraint Petition (PRP) in this court that repeated the same due process, First Amendment, and Fourteenth Amendment claims based on the November 4 letter that he made in his federal complaint. In DOC's initial response, it maintained that the PRP should be dismissed

---

[1] Keodara also claimed violations of equal protection, the Eighth Amendment, and retaliation under the First Amendment.

[2] To support an argument that the marriage claim was moot, DOC filed documentation that in June 2022, Hailey Harless submitted an application to DOC to marry Keodara, describing him as her fiancé, whom she has known for three years. In July, Keodara and Harless signed a DOC form affirming that they read and understood DOC's applicable marriage policy.

[3] JPAY is a system that allows inmates to send and receive electronic messages, photographs, and videos from individuals in the community.

because Keodara had already filed a civil rights lawsuit making the same claims and seeking the same relief as his PRP. Keodara filed a reply arguing that the doctrines of res judicata and collateral estoppel did not apply at that time because the federal district court matter was still pending and no judgment had been entered. Keodara further noted that if this court were to decide his due process issue on the merits, the federal district court would be required to honor the state court's judgment. The acting chief judge of this court referred Keodara's PRP to a panel of this court and appointed counsel to represent Keodara.

The briefing in the instant case was completed in July 2023. In September 2023, the federal court granted DOC's motion for summary judgment dismissal of Keodara's claims. Keodara v. Boe, No. 3:21-CV-5129 TMC-TLF, 2023 WL 6377570, at *1 (W.D. Wash. Sept. 29, 2023) (court order). DOC subsequently filed in this court a "Motion on the Merits To Dismiss under RAP 17 and 16.15(A) Based on Res Judicata and Collateral Estoppel." Keodara filed a response to that motion arguing that this court should not apply res judicata because it would create an injustice because he was not represented by an attorney in his federal court suit and that the two actions did not share the same subject matter or cause of action.

## DISCUSSION

To prevail on a PRP, a petitioner must show that he or she is under restraint as defined by RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c). In re Pers. Restraint of Dove, 196 Wn. App. 148, 153-54, 381 P.3d 1280 (2016). A petitioner is under restraint when he or she is confined. RAP 16.4(b). Such restraint can be unlawful if the "conditions or manner of the restraint" violate the constitutions of the

United States or the State of Washington or violates Washington state law. RAP 16.4(c)(6). "[P]risoners challenging prison discipline need not make a prima facie case of constitutional error and actual and substantial prejudice or nonconstitutional error and total miscarriage of justice." In re Pers. Restraint of Grantham, 168 Wn.2d 204, 218, 227 P.3d 285 (2010). Keodara must show only that he is under unlawful restraint as defined by RAP 16.4. In re Pers. Restraint of Stuhr, 186 Wn.2d 49, 52, 375 P.3d 1031 (2016). As an inmate confined in a state correctional facility, Keodara is under "restraint." Kozol v. Dep't of Corr., 185 Wn.2d 405, 409, 379 P.3d 72 (2016), as corrected (Aug. 1, 2016).

The parties dispute whether the November 4 termination letter to Mesa can be considered a disciplinary action against Keodara. We need not answer that question because we agree with DOC that res judicata bars Keodara's claims.

### Procedure

We first address a preliminary matter as to the way the issue of res judicata came before this court. Res judicata is an affirmative defense. Jumamil v. Lakeside Casino, LLC, 179 Wn. App. 665, 680, 319 P.3d 868 (2014). Thus, while DOC is correct that its argument is "on the merits," it filed its motion to dismiss under RAP 17 and RAP 16.15(a), which govern the filing of motions generally.[4] Because raising an affirmative defense of res judicata is a consideration on the merits, DOC's motion should have been a request to supplement the record under RAP 9.10[5] and to file supplemental

---

[4] RAP 16.15(a) states that the procedure for and form of a motion related to a PRP is provided in Title 17, which provides that a "person may seek relief, other than a decision of the case on the merits, by motion as provided in Title 17." RAP 17.1(a).

[5] RAP 9.10 allows the appellate court to direct the supplementation of the record on the motion of a party "if the record is not sufficiently complete to permit a decision on the merits of the issues presented for review."

briefing under RAP 10.1(h).[6]  Because all parties had the opportunity to brief the issues raised without objection, we exercise our discretion to treat the additional filings as supplemental record and briefing.  RAP 18.8.[7]

### Res Judicata

DOC contends that res judicata and collateral estoppel bar this PRP because Keodara raised the same claims and issues involving the same parties in his federal civil rights action where a final judgment has been entered.

"Res judicata and collateral estoppel are kindred doctrines designed to prevent repetitive litigation."  Eckstrom v. Hansen, 4 Wn. App. 2d 580, 584, 422 P.3d 926 (2018).  The "'doctrine of res judicata rests upon the ground that a matter which has been litigated, or on which there has been an opportunity to litigate, in a former action in a court of competent jurisdiction, should not be permitted to be litigated again.  It puts an end to strife, produces certainty as to individual rights, and gives dignity and respect to judicial proceedings.'"  Marino Prop. Co. v. Port Comm'rs, 97 Wn.2d 307, 312, 644 P.2d 1181 (1982) (quoting Walsh v. Wolff, 32 Wn.2d 285, 287, 201 P.2d 215 (1949)).  The burden of proof rests on the party asserting these defenses.  In re Pers. Restraint of Metcalf, 92 Wn. App. 165, 174, 963 P.2d 911 (1998).  In this case, DOC asserts the defense and bears the burden to prove that res judicata and collateral estoppel apply.

Res judicata, or claim preclusion, bars the re-litigation of claims that were or should have been litigated in a prior action.  Weaver v. City of Everett, 4 Wn. App. 2d

---

[6] "The appellate court may in a particular case, on its own motion or on motion of a party, authorize or direct the filing of briefs on the merits other than those listed in this rule."  RAP 10.1(h).

[7] RAP 18.8(a) allows us to waive the requirements of the rules of appellate procedure where we find it appropriate.

303, 320, 421 P.3d 1013 (2018).  The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit.  Emeson v. Dep't of Corr., 194 Wn. App. 617, 626, 376 P.3d 430 (2016).  A grant of summary judgment in a prior proceeding is considered a final judgment on the merits.  DeYoung v. Cenex Ltd., 100 Wn. App. 885, 892, 1 P.3d 587 (2000).  "Res judicata . . . applies where a prior final judgment is identical to the challenged action in '(1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made.'" Lynn v. Dep't of Labor & Indus., 130 Wn. App. 829, 836, 125 P.3d 202 (2005) (quoting Loveridge v. Fred Meyer, Inc., 125 Wn.2d 759, 763, 887 P.2d 898 (1995)).  Courts should not apply res judicata when the doctrine would work an injustice.  Metcalf, 92 Wn. App. at 174.

First, the subject matter of this PRP and the federal action are the same.  In the previous federal litigation, Keodara claimed that Superintendent Boe's November 4 termination letter violated his procedural due process rights under the Fourteenth Amendment, his First Amendment right of freedom of expression, and his substantive right to marriage guaranteed under the Fourteenth Amendment.  In his PRP, Keodara again claimed his federal constitutional rights to procedural due process, right to marry, and First Amendment rights were violated.[8]

DOC asserts that, in Keodara's cross motion for summary judgment in the federal action, he "abandoned his standalone First Amendment free speech claim, instead incorporating it into his Fourteenth Amendment procedural due process claim."

---

[8] Keodara makes a passing notation of Article I § 14 of the Washington State Constitution in his PRP but makes no substantive argument under the Washington State Constitution.  "This court will not consider claims insufficiently argued by the parties."  State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

The motion filed by Keodara does not reflect such an abandonment. Keodara instead argued that he had First Amendment rights as an incarcerated individual and that his rights were impinged upon when DOC allegedly retaliated against him by terminating his ability to communicate with Mesa. Keodara v. Boe, No. 3:21-CV-5129 TMC-TLF (W.D. Wash. May 4, 2022), ECF No. 50 at 13. The district court noted that "Keodara reasons that if Mesa was not involved in the drug ring, restricting his access to her could not have furthered penological goals and was only done in retaliation for his grievances. Keodara v. Boe, No. 3:21-CV-5129 TMC-TLF, 2023 WL 6377570, at *4 (W.D. Wash. Sept. 29, 2023) (court order). However, the court found that defendants

> offer ample evidence that termination of Mesa's communication and visitation privileges advanced the legitimate correctional goals of keeping the facility safe and reducing the presence of illegal drugs. Defendants had significant evidence that Mesa (once a federal law enforcement officer) was a key player in a prison drug smuggling ring. Superintendent Boe's decision to ban Mesa from access to CBCC was reasonably calculated to reduce the likelihood that more illegal drugs would enter the facility.

Id. at *5.

Whether the federal court addressed Keodara's First Amendment free speech claim as part of his retaliation claim or as a standalone claim is of no matter because "[r]es judicata applies to matters that were actually litigated and those that 'could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding.'" Emeson, 194 Wn. App. at 626 (emphasis added) (internal quotation marks omitted) (quoting DeYoung, 100 Wn. App. at 891-92; see, e.g., Kuhlman v. Thomas, 78 Wn. App. 115, 124, 897 P.2d 365 (1995)) (finding the same subject matter even where the claims were different, because the basis of the claims was the plaintiff's alleged deprivation of a constitutional right and tortious harm resulting from false

allegations). The federal court, in analyzing Keodara's Fourteenth Amendment due process claim, rejected his assertion that he had a protected liberty interest in communicating with a particular visitor. The ultimate basis underlying all of Keodara's claims is whether the decision reflected in the November 4 letter violated Keodara's federal constitutional rights.

Second, the cause of action in each is identical. While "there is no specific test for determining identity of causes of action," analytical tools include "(1) whether the rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the suits involved infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." Ensley v. Pitcher, 152 Wn. App. 891, 903, 222 P.3d 99, 104 (2009) (quoting Kuhlman, 78 Wn. App. at 122). "[I]t is not necessary that all four factors be present to bar the claim." Id. Washington courts in some contexts have referred to a "cause of action" as the act that occasioned the injury and the legal right of the plaintiff invaded by the defendant. Eugster v. State Bar Ass'n, 198 Wn. App. 758, 788, 397 P.3d 131 (2017) (citing McFarling v. Evaneski, 141 Wn. App. 400, 405, 171 P.3d 497 (2007)). The claims in Keodara's PRP involve the same set of facts supported by the same evidence and legal theories as in his federal action. See Emeson, 194 Wn. App. at 636. Both litigations completely revolved around the November 4 termination letter from Boe.

Keodara contends that the cause of action in both cases was not identical because the federal suit was brought under 42 U.S.C. § 1983 while the instant case addresses unlawful restraint. Thus, Keodara argues, the federal court only considered

federal law whereas this court considers Washington law addressing due process when inmates are given serious infractions. It is true that "administrative rules constitute the laws of Washington for purposes of determining when an inmate is under 'unlawful restraint' as defined under RAP 16.4(c)(6)." Kozol, 185 Wn.2d at 410. But the claims Keodara raises in both his PRP and his § 1983 action are that his federal constitutional rights are violated. And while Keodara frames his case as a prison disciplinary matter, the action, the November 4 letter, was not a disciplinary action against Keodara, despite the fact the effect of the action implicated his ability to communicate with Mesa.[9] This does not mean Keodara cannot claim that his constitutional rights were nonetheless implicated. See In re Pers. Restraint of Arseneau, 98 Wn. App. 368, 989 P.2d 1197 (1999) (review of a PRP challenging DOC's action prohibiting a prison inmate from writing letters to his niece that did not involve a disciplinary action). The cause of action in Keodara's PRP is identical to his cause of action in his federal suit.

Under the third and fourth elements, the parties and quality of persons against whom the constitutional claim is made are identical. "Under the principles of res judicata, a judgment is binding upon parties to the litigation and persons in privity with those parties." Emeson, 194 Wn. App. at 635 (quoting Loveridge, 125 Wn.2d at 764). Privity is established "where a person is in actual control of the litigation, or substantially participates in it." Id. at 635-36. Keodara named both Superintendent Boe and Assistant Secretary Herzog in their official capacities with the DOC as defendants in his federal suit. Here, Keodara challenges the constitutionality of the decisions made by Boe and Herzog. Both Keodara and DOC were in actual control of their interests during

---

[9] Notably, when Keodara was disciplined in August 2021 for violating the November 4 "permanent suspension memo," he did not appeal.

the federal court litigation and this PRP. The federal court complaint was defended by DOC and summary judgment was granted following a motion by DOC. Keodara represented himself in the federal suit and initiated the petition in this PRP. DOC has again defended against Keodara in this PRP.

Lastly, DOC maintains that applying res judicata to bar Keodara's PRP claims would not work an injustice because Keodara had a full and fair opportunity to litigate his claims in federal district court. Keodara successfully filed a multi-count complaint in federal court, cited case law on point, engaged in discovery, and successfully filed a cross motion for summary judgment.

Keodara's only argument that the application of res judicata would work an injustice is that Keodara did not have assistance of counsel in his federal suit. Keodara cites Penner v. Central Puget Sound Regional Transit Authority, 25 Wn. App. 2d 914, 928, 525 P.3d 1010, review denied, 1 Wn.3d 1026 (2023) (citing In re Coday, 156 Wn.2d 485, 502 n.4, 130 P.3d 809 (2006)), for the proposition that the "Washington Supreme Court has 'specifically cautioned that res judicata should not apply if the previous litigants did not have adequate representation.'" That quotation does not stand for the proposition that because one matter is a pro se litigation res judicata would presumptively work an injustice. What the Supreme Court actually stated in the Coday footnote was "we might well decline to apply res judicata to bar election contests where the contestants in an earlier case do not adequately represent the interests of the electorate generally." Coday, 156 Wn. 2d at 502 n.4.

Keodara also cites as an example Christensen v. Grant County Hosp. Dist. 1, 152 Wn.2d 299, 316-17, 96 P.3d 957 (2004), in which the Supreme Court considered

the litigant's argument that res judicata should not bar his suit because he was represented by a union lawyer in the previous case and he did not actively participate in the union's complaint. The court concluded that undisputed evidence showed that the litigant consented to his claim being advanced by the union even though he could have declined. Id. at 316. Notably, the court stated, "We reiterate that whether the decision in the earlier proceeding was substantively correct is generally not a relevant consideration in determining whether application of collateral estoppel would work an injustice." Id. at 317. In determining whether there was a procedural unfairness resulting in injustice the court looked to whether the litigant had a "full and fair opportunity to litigate." Id. at 317. Christensen does not help Keodara.

Keodara argues that, unlike federal law, Washington provides for the appointment of counsel on collateral attacks. See generally CrR 3.1(b)(2)(A). But Keodara, other than noting the fact that he proceeded pro se in his federal case, does not rebut DOC's argument that Keodara had a full and fair opportunity to litigate, and, thus, application of res judicata does not work an injustice. Any general argument that having an attorney represent Keodara would have resulted in a more favorable ruling is not a relevant consideration. In fact, Keodara was aware that filing the same claims in two different courts risked the application of res judicata. When DOC initially argued that the PRP was not proper because Keodara had filed the same claims in district court, it was Keodara who replied that if this court determined his due process claims in his PRP before the federal court ruled, the federal court would be required to honor the state court judgment. It just so happened that the federal court ruled on Keodara's claims first.

Res judicata bars Keodara's claims raised in his PRP.  Accordingly, we deny his petition.[10]

WE CONCUR:

_Cohen, J._

_Birk, J._

_Hazelrigg, ACJ_

---

[10] Because res judicata bars Keodara's claims, we need not consider the application of collateral estoppel or DOC's argument that Keodara's marriage claim is moot because of Keodara's application to marry someone else.